United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2007

Charles R. Fulbruge III
Clerk

**REVISED August 22, 2007**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 06-30686

DILBERT IVAN CALIX-CHACON,

Plaintiff - Appellee,

v.

GLOBAL INTERNATIONAL MARINE, INC.,

Defendant - Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, DAVIS, and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant Global International Marine, Inc. appeals the judgment of the district court denying its motion to dismiss the action for maintenance and cure brought by seaman Dilbert Ivan Calix-Chacon. The district court refused to enforce the forum selection clause in the employment agreement between the parties on public policy grounds. Because we conclude that the public policy grounds relied on by the district court were improper, we vacate and remand for further proceedings to determine whether the forum selection clause is enforceable under the guidelines established in <u>Bremen</u> and its progeny.[1]

---

[1] <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1 (1972).

I.

A.

Honduran native Dilbert Ivan Calix-Chacon ("Calix") was hired by Global International Marine, Inc. ("Global"), a U.S. corporation operating out of Houma, Louisiana, to work as a seaman on its ship, the M/V SAMSON. Global used the Honduran crewing agency Sitralmahr to hire Caliz. Calix, who speaks limited English, signed an employment contract which was written in English for a term beginning December 19, 2005, and ending March 19, 2006.[2] The contract contained a choice of law clause providing that Honduran law would apply to the employment agreement, including recovery or compensation for injury, death, or medical expenses. It also included a forum selection clause providing that any claim arising out of the employment agreement or for injury would be brought exclusively in a court of competent jurisdiction in Honduras. Sitralmahr's owner, Felipe Rodriguez, submitted an affidavit stating that he explained the terms of the contract, including the forum selection clause, to Calix.

The M/V SAMSON is a U.S. flagged vessel that ordinarily operates in the Carribean. At the time Calix was hired, it was in dry dock in Louisiana undergoing routine maintenance and inspections for United States certification.

While doing maintenance aboard the SAMSON on January 31, 2006, Calix experienced severe stomach pain. He was diagnosed with an inflamed gall bladder and his gall bladder was removed at Terrebonne General Medical Center in Houma, Louisiana. After the gall bladder

---

[2]This was his second employment engagement with Global.

surgery doctors determined that Calix had an enlarged heart (cardiomegaly).  His physician recommended an immediate heart transplant.

B.

Although Global paid for Calix's gall bladder surgery, it refused to pay for his heart transplant.  Calix filed suit in district court seeking maintenance and cure including the cost of a heart transplant and ancillary care.  Global responded with a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(3), asking the court to enforce the forum selection clause in the employment contract.  The district court held an expedited hearing and denied Global's motion. The court concluded that the forum selection clause was unenforceable based on the Supreme Court's decision in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972).  The court concluded that the forum selection clause was not enforceable under Bremen because its enforcement would "contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Id. at 15.

The district court concluded that both the general maritime law and the Shipowner's Liability (Sick and Injured Seamen) Convention of 1936, an international treaty ratified by the United States, express a strong public policy preventing the contractual abridgment of maintenance and cure liability.  The court noted that the Convention codified the pre-existing federal common law of American maintenance and cure as binding international law for those who ratified it.

The district court then held an expedited trial on the merits of Calix's claim for maintenance and cure.  The district court found that Calix's medical condition arose in the service

3

of the vessel and that Global was obligated to provide cure to Calix. The court's judgment

ordered Global to pay for all necessary past and future care as recommended by Calix's physician,

including the immediate transfer of Calix to an accredited heart transplantation facility to await an

available heart for a transplant. Counsel advised the court at oral argument that while this appeal

was pending, Calix underwent a successful heart transplant operation. He is currently receiving

followup care including round-the-clock nurses, and anti-rejection medication.

The district court issued a Rule 54(b) certificate to allow an immediate appeal. Global

appeals.

## II.

"[T]he enforcement of a forum selection clause is an issue of law, and we review the

district court's conclusions of law *de novo*." MacPhail v. Oceaneering Int'l, Inc., 302 F.3d 274,

278 (5th Cir. 2002). We also review *de novo* a district court's determination that a contract clause

is unenforceable based on public policy grounds. Id. Because this is a case in admiralty, federal

law governs whether the forum selection clause in Calix's employment contract with Global is

enforceable. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590 (1991).[3]

## III.

### A.

In analyzing the enforceability of the forum selection clause in Calix's employment

contract we begin with the Supreme Court's decision in M/S Bremen v. Zapata Off-Shore Co..

407 U.S. 1 (1972). In Bremen a tugboat owner (a German corporation) entered into a contract

---

[3] Any discussion by Calix of Louisiana law, particularly La. R.S. 23:921A(2), is irrelevant to this case.

with Zapata (a Texas corporation) to tow Zapata's oil rig from Louisiana to Italy. The contract provided that "[a]ny dispute arising [out of the contract] must be treated before the London Court of Justice." Id. at 2.

While the tug and tow were in the Gulf of Mexico they encountered a storm which resulted in damage to the rig which was then brought to Florida. Zapata later filed suit against the German company in admiralty in federal court in Tampa seeking damages for negligent towage and breach of contract. The German company sought to enforce the forum selection clause and challenged the jurisdiction of the U.S. court asking the court to dismiss the suit based on lack of jurisdiction or forum non conveniens.

The district court held the contract's forum selection clause unenforceable and this court affirmed. The Supreme Court reversed and held that in maritime actions forum selection clauses are to be enforced unless the forum selection clause is fundamentally unfair and therefore unreasonable. The court established four bases for concluding that a forum selection clause is unreasonable:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

Haynsworth v. Corporation, 121 F.3d 956, 963 (5th Cir. 1997), citing Carnival Cruise Lines, 499 U.S. 585, 595 (1991), and Bremen, 407 U.S. at 12-13.

The Supreme Court next addressed the enforceability of forum selection clauses in

5

Carnival Cruise Lines v. Shute, 499 U.S. 585 (1991). In this case Russell and Eulala Shute purchased cruise tickets through a Washington travel agency for a 7 day Carnival Cruise Lines cruise. The agent forwarded the Shutes' payment to Carnival's headquarters and Carnival sent the Shutes their tickets. The forum selection clause was on the back of the tickets and required that all suits relating to the cruise be litigated in Florida. The Shutes boarded the ship destined for Puerto Vallarta, Mexico in Los Angeles. While in international waters off Mexico, Eulala Shute was injured when she slipped on a deck mat during a guided tour of the ship's galley. The Shutes sued in federal court in the State of Washington. The district court granted Carnival's motion to dismiss for lack of personal jurisdiction due to insufficient contacts with the State of Washington. The Ninth Circuit reversed. In addition to the personal jurisdiction question the Ninth Circuit also concluded that because the forum selection clause "was not freely bargained for" it was invalid.

The Supreme Court reversed and held that the clause in question was enforceable though not the product of bargaining, because it was unreasonable to assume that a cruise line would negotiate with a passenger over a provision in a passage contract. The court followed the Bremen analysis and held that, as a general rule, forum selection clauses in cruise ship passage contract tickets are valid and should be enforced unless enforcement is shown to be unreasonable. The court declined to deny enforcement against a routine consumer cruise ticket holder based on the passenger's argument that the provisions incorporated in the printed ticket were not negotiated agreements between parties of equal bargaining power. Rather the court gave broad approval of forum selection clauses despite the lack of equal bargaining position and the fact that the provision was not negotiated.

The case which is most factually analogous to today's case is a decision by this court in Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216 (5th Cir. 1998). In that case, we applied the Bremen/Shute analysis to a forum selection clause included in a seaman's employment contract. In Marinechance, two seaman, both citizens of the Philippines were injured in an accident aboard the M/V ELLISPONTOS while in the Mississippi River near Burnside, Louisiana. The seamen were transported to a hospital in Baton Rouge, Louisiana for treatment.

The M/V ELLISPONTOS was owned by Marinechance, a corporation with its principal place of business in Nicosia, Cyprus. Marinechance sued in federal district court seeking a declaratory judgment that any litigation arising from the accident must proceed if at all in the courts of the Philippines under the law of the Philippines. The district court granted summary declaratory judgment in favor of Marinechance and enjoined the seamen from filing suit in the Louisiana state courts.

The seamen were employed under a contract approved by the Philippine Overseas Employment Administration. The contract required that "any disputes . . shall be referred for settlement solely to the exclusive jurisdiction of the competent Courts or Authorities, as the case may be, in the country of the seaman's nationality where the contract of employment was signed and approved." In holding that the forum selection clause was valid and enforceable Judge Wisdom, speaking for this court, stated:

> In M/S Bremen v. Zapata Off-Shore, the Supreme Court held that forum selection clauses in admiralty cases are presumptively valid and enforceable. Forum selection clauses are important in international cases such as the instant case because there is much uncertainty regarding the resolution of disputes. Ocean-going vessels travel through many jurisdictions, and could become subject to the laws of a particular jurisdiction based solely upon the fortuitous event of an

7

accident. "The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." To overcome the presumption that the forum selection clause is enforceable, the party challenging the clause must make a "strong showing" that the clause is unreasonable.

Id. at 220. We concluded that:

The similarities between the present case and Carnival Cruise Lines are many. The contracts of employment for seamen aboard international vessels are routine; the seaman individually do not have much bargaining power. The selection of a forum in advance reduces the vessel owner's exposure to suits in forums all over the world. Furthermore, it informs the seamen of where their causes of action can be maintained.

Id. at 221.

We also rejected the seamen's argument that the forum selection clause in their contract did not apply to their tort causes of action. We pointed out that the action in Carnival Cruise Lines was a slip and fall case on the deck of the vessel and that the Supreme Court held that the forum selection clause was enforceable in that case.

We found Justice Kennedy's views in his concurrence helpful on understanding the strong presumption in favor of enforcement of forum selection clauses. "Justice Kennedy summarized the strong presumption in favor of the enforceability of forum selection clauses as follows: 'a valid forum selection clause is given controlling weight in all but the most exceptional cases.' Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 , 108 S.Ct. 2239 (Kennedy, J., concurring)." Id. at 220, n.16.

B.

With this background we now turn to the question presented to the district court: whether this is an exceptional case where the forum selection clause in the seaman's employment contract

8

should be considered so unfair and unreasonable as to be unenforceable. The district court found the clause to be unreasonable and therefore unenforceable because enforcement would contravene a strong public policy of the U.S. which favors a seaman's maintenance and cure remedy as expressed in the Shipowner's Liability (Sick and Injured Seaman) Convention of 1936.

The Shipowners' Liability Convention of 1936 (the "Convention") is an international treaty ratified by the United States Senate in 1938. Article 2 of the Convention declares that "[t]he shipowner shall be liable in respect of (a) sickness and injury occurring between the date specified in the articles of agreement for reporting for duty and the termination of the engagement." Article 1(1) of the Convention declares that it applies to "all persons employed on board any vessel, other than a ship of war, registered in a territory for which this Convention is in force and ordinarily engaged in maritime navigation."

The Supreme Court, however, has made it clear that the Convention restates the rule as it exists under the General Maritime Law. By signing on to the Convention there was no intent to change existing law. Rather,

> [t]he aim of the Convention "was not to change materially American standards but to equalize operating costs by raising the standards of member nations to the American level." Warren v. United States, 340 U.S. 523, 527 (1951). Thus Art. 4, P. 1, is declaratory of a longstanding tradition respecting the scope of the shipowner's duty to furnish injured seamen maintenance and cure, Farrell v. United States, [336 U.S. 511] at 518.

Vella v. Ford Motor Co., 95 S. Ct. 1381, 1384 (1975).

This policy statement regarding the shipowner's duty to furnish injured seaman maintenance and cure did not bar this court from deciding in Marinechance that a forum selection clause is valid and enforceable against all of the claims raised by the injured seamen. The record

9

in Marinechance reflects that the seamen in that case had requested maintenance and cure. Their briefs made it clear that they asserted claims under the General Maritime Law, the source of their maintenance and cure action, as well as damage claims under the Jones Act.

The district court has in effect held that the Convention prohibits a federal district court from refusing to entertain maintenance and cure claims brought by foreign seamen in a United States court. Based on our decision in Marinechance, that is clearly not the law. Also, in In re McClelland Engineers, Inc., foreign seamen were injured in foreign waters and brought suit against American defendants in the Southern District of Texas. Regarding the district court's conclusion that the Convention precluded a court from choosing foreign law when it imposes a lower standard of care or relief than domestic law and that "any foreign seaman injured on the high seas (as these may not have been) is entitled to access to United States courts and United States remedies, apparently whether he is suing a United States vessel or not; and to deny him that access is to deny him 'equality of treatment,'" this court viewed the ruling as "a candidly novel and clear departure from our holdings and those of the Supreme Court." In re McClelland Engineers, Inc., 742 F.2d 837, 839 (5th Cir. 1984), *cert. denied*, 469 U.S. 1288 (1985), overruled on other grounds by In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147 (5th Cir. 1987).[4]

Thus we conclude that the district court erred in relying on the Convention as representing

---

[4]McClelland came to this court on a petition for Writ of Mandamas directing the district court to vacate its order denying forum non conveniens motion and dismiss the actions or certify its order for interlocutory review. Although no forum selection clause was at issue in that case, the opinion makes clear that the district court's reliance on the Convention as a basis for a blanket bar against forcing seamen to raise their claims outside the United States' court system was unsupportable.

a strong public policy in favor of the maintenance and cure remedy that renders a forum selection clause unenforceable. We therefore vacate the district court's judgment finding the forum selection clause unreasonable on this basis and remand this case to the district court for further proceedings on this issue. On remand, the burden of establishing unreasonableness is on Calix, the party seeking to set aside the provision. Bremen, 407 U.S. at 15. On remand the district court should make factual findings so it can apply the Bremen factors and determine whether "(1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) [Calix] 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive [him] of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state." Haynesworth, 121 F.3d at 963.

At oral argument, Calix's counsel focused on the third Bremen factor - "the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy." Calix argued that Honduran law would not provide sufficient funds to permit him to maintain his anti-rejection drug regime necessary to sustain life following his heart transplant. Calix argued that unless he can recover medical expenses sufficient to prevent rejection of his new heart, it will fail and he will in effect be deprived of a remedy.

On the assumption that Calix will present a similar argument to the district court it will be necessary for the district court to determine what remedy is available to Calix under Honduran law and whether such recovery will be likely adequate for Calix to avoid his body's rejection of the transplanted heart. The available medical care in Honduras may also be relevant in this

11

context. The district court should make factual findings on these and other issues presented by the parties related to whether plaintiff will for all practical purposes be deprived of his day in court or be deprived of a remedy if the court enforces the forum selection clause.

In applying the facts to the <u>Bremen</u> exceptions, we do not mean to suggest Calix is entitled to medical care that could be considered standard in the United States. In a forum non conveniens context, the Supreme Court has stated that a dismissal "may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 250 (1981).[5] As the court stated in <u>Carnival Cruise Lines v. Shute</u>, we will declare forum selection clauses unenforceable only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair. <u>Shute</u>, 499 U.S. 585, 595. See also <u>Piper Aircraft</u>, 454 U.S. at 254 (An unfavorable change in law is a relevant consideration in a forum non conveniens inquiry "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all.")

Concerning Calix's physical limitations, <u>Carnival Cruise Lines</u> did not accept the Court of Appeal's justification that a choice of forum clause should not be enforced because the plaintiffs are physically and financially incapable of pursuing litigation in the forum chosen in the choice of forum clause when the district court made no factual findings on the issue. 499 U.S. at 594. And as the Second Circuit has held, with modern conveniences of electronic filing and

_____

[5] A forum selection clause is a contractual waiver of the right to seek transfer or dismissal based on the parties own inconvenience. <u>Northwestern Nat'l Ins. Co. v. Donovan</u>, 916 F.2d 372, 378 (7th Cir. 1990). Where the parties have agreed on a forum, as in this case, the factors relevant in a forum non conveniens analysis would seem to apply with even greater force in favor of the chosen forum.

12

videoconferencing, "[a] plaintiff may have his 'day in court' without ever setting foot in a courtroom." Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995). Thus, a conclusion that Calix's legal remedy must be pursued in Honduras does not necessarily mean that he physically must travel to that jurisdiction.[6]

## CONCLUSION.

For the reasons stated above, we VACATE the judgment of the district court and REMAND this case to the district court for further proceedings consistent with this opinion.

---

[6] It would, of course, be relevant to consider whether Honduran law requires his physical presence to pursue litigation. Repatriation is a separate issue not yet addressed by the district court.