# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 14-30132

———————

United States Court of Appeals
Fifth Circuit

**FILED**
April 16, 2015

Lyle W. Cayce
Clerk

LITO MARTINEZ ASIGNACION,

Plaintiff–Appellee,

v.

RICKMERS GENOA SCHIFFAHRTSGESELLSCHAFT MBH & CIE KG,

Defendant–Appellant.

-------------------------------------------------------------------------------------------

RICKMERS GENOA SCHIFFAHRTSGESELLSCHAFT MBH & CIE KG,

Plaintiff–Appellant,

v.

LITO MARTINEZ ASIGNACION,

Defendant–Appellee.

———————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————

Before STEWART, Chief Judge, and BENAVIDES and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

No. 14-30132

Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG (Rickmers) sought to enforce a Philippine arbitral award given to Lito Martinez Asignacion for maritime injuries. The district court refused to enforce the award pursuant to the public-policy defense found in the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention)[1] and the prospective-waiver doctrine. Rickmers appeals. We reverse and remand for the district court to enforce the award.

**I**

Asignacion, a citizen and resident of the Philippines, signed a contract to work aboard the vessel M/V RICKMERS DAILAN. Rickmers, a German corporation, owned the vessel, which sailed under the flag of the Marshall Islands.

Philippine law mandates that foreign employers hire Filipino workers through the Philippine Overseas Employment Administration (POEA), an arm of the Philippine government. POEA requires Filipino seamen's contracts to include the Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean Going Vessels (Standard Terms). Asignacion's contract incorporated the Standard Terms.

The Standard Terms include several provisions related to dispute resolution. Section 29, in part, provides:

> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act of 1995 or to the original and

---

[1] Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.

exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators.

Section 31 provides:

> Any unresolved dispute, claim or grievance arising out of or in connection with this Contract, including the annexes thereof, shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory.

Section 20(B) provides that when a seaman suffers work-related injuries, the employer must provide the full cost of medical treatment until the seaman is declared fit to work or his level of disability is declared after repatriation to the Philippines. If the seaman is permanently disabled, he is entitled to scheduled disability benefits. Section 20(G) provides that the contract covers "all claims arising from or in the course of the seafarer's employment, including but not limited to damages arising from the contract, tort, fault or negligence under the laws of the Philippines or any other country."

While the M/V RICKMERS DAILAN was docked in the Port of New Orleans, Asignacion suffered burns when a cascade tank aboard the vessel overflowed. After receiving treatment at a burn unit in Baton Rouge for nearly a month, Asignacion was repatriated to the Philippines, where he continued to receive medical attention. The court below found that Asignacion sustained severe burns to 35% of his body, suffered problems with his body-heat control mechanism, and experienced skin ulcerations and sexual dysfunction. The record and the district court's opinion do not address Asignacion's current condition.

Asignacion sued Rickmers in Louisiana state court to recover for his injuries. Rickmers filed an exception seeking to enforce the arbitration clause of Asignacion's contract. The state court granted the exception, stayed litigation, and ordered arbitration in the Philippines.

No. 14-30132

Arbitration commenced before a Philippine panel, which convened under the auspices of the Philippine Department of Labor and Employment. The panel refused to apply, or even consider applying, United States or Marshall Islands law, finding that Section 31 of the Standard Terms prevented the panel from applying any law besides Philippine law. The arbitrators accepted Rickmers's physician's finding that Asignacion had a Grade 14 disability—the lowest grade of compensable disability under the Standard Terms—which entitled Asignacion to a lump sum of $1,870.

Asignacion then filed a motion in the Louisiana state court asking that Rickmers show cause as to why the Philippine arbitral award should not be set aside for violating United States public policy. Rickmers removed the suit to federal court and brought a second action in the district court seeking to enforce the award.

The district court determined that the Convention provided the legal framework for analyzing the award and that the only defense Asignacion invoked was Article V(2)(b) of the Convention. Article V(2)(b) allows a signatory country to refuse enforcement if "recognition or enforcement of the award would be contrary to the public policy of that country."[2]

The district court proceeded to apply the traditional choice-of-law analysis for maritime injury cases, the *Lauritzen*[3]–*Rhoditis*[4] test, and concluded that the law of the vessel's flag—the Marshall Islands—should apply absent a valid choice-of-law clause. The court also found that the Marshall Islands adopts the general maritime law of the United States. The court then held that enforcing the arbitral award would violate the United States public

---

[2] Convention art. V(2)(b).

[3] *Lauritzen v. Larsen*, 345 U.S. 571 (1953).

[4] *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970).

policy protecting seamen. The public-policy violation arose not from the arbitrator's failure to apply United States law but rather because applying Philippine law effectively denied Asignacion the "opportunity to pursue the remedies to which he was entitled as a seaman," i.e., maintenance and cure, negligence, and unseaworthiness. The court additionally held that the prospective-waiver doctrine, which invalidates certain combined choice-of-law and choice-of-forum provisions, applied to Asignacion's contract. Thus, the court entered an order refusing to enforce the Philippine arbitral award. Rickmers now appeals.

## II

We review the district court's decision refusing to enforce the Philippine arbitral award under the same standard as any other district court decision.[5] We accept findings of fact that are not clearly erroneous and review questions of law *de novo*.[6]

## III

The Convention applies when an arbitral award has been made in one signatory state and recognition or enforcement is sought in another signatory state.[7] Both forums in this case, the United States and the Philippines, are signatories to the Convention.[8] An award's enforcement is governed by the Convention, as implemented at 9 U.S.C. § 201 *et seq.*, if the award arises out

---

[5] *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004) (reviewing a district court judgment enforcing a foreign arbitral award).

[6] *Hughes Training Inc. v. Cook*, 254 F.3d 588, 592 (5th Cir. 2001).

[7] Convention, 21 U.S.T. at 2566 ("The United States of America will apply the Convention, on the basis of reciprocity, to the recognition and enforcement of only those awards made in the territory of another Contracting State."); *see also id.* art. I(3).

[8] *See, e.g.*, *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 900-01 (5th Cir. 2005).

5

No. 14-30132

of a commercial dispute and at least one party is not a United States citizen.[9] The award issued as a result of arbitration between Asignacion, a Filipino seaman, and Rickmers, a German corporation, is governed by the Convention.

A party to an award governed by the Convention may bring an action to enforce the award in a United States court that has jurisdiction.[10] The court "shall confirm" the award unless a ground to refuse enforcement or recognition specified in the Convention applies.[11] The Convention permits a signatory to refuse to recognize or enforce an award if "recognition or enforcement of the award would be contrary to the public policy of that country."[12]

Arbitral awards falling under the Convention are enforced under the Federal Arbitration Act (FAA).[13] An "emphatic federal policy" favors arbitral dispute resolution.[14] The Supreme Court has noted that this policy "applies with special force in the field of international commerce."[15] The FAA permits courts to "vacate an arbitrator's decision 'only in very unusual circumstances.'"[16] A district court's review of an award is "extraordinarily narrow."[17] Similarly, a court reviewing an award under the Convention cannot

---

[9] *See* 9 U.S.C. § 202 (providing that commercial arbitral awards fall under the Convention except for certain awards entirely between United States citizens).

[10] 9 U.S.C. § 207.

[11] *Id.*

[12] Convention art. V(2)(b).

[13] *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see also* 9 U.S.C. § 201 ("The [Convention] shall be enforced in United States courts in accordance with this chapter.").

[14] *Mitsubishi*, 473 U.S. at 631 (1985).

[15] *Id.*

[16] *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).

[17] *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004), *abrogated on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).

refuse to enforce the award solely on the ground that the arbitrator may have made a mistake of law or fact.[18] The party opposing enforcement of the award on one of the grounds specified in the Convention has the burden of proof.[19]

We have held that the Convention's "public policy defense is to be 'construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice.'"[20] In the context of domestic arbitral awards, the Supreme Court has recognized a public-policy defense only when an arbitrator's contract interpretation violates "'some explicit public policy' that is 'well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'"[21] The Eleventh Circuit has held that the "explicit public policy" requirement applies with the same force to international awards falling under the Convention.[22] We see no reason to depart from that standard here.[23]

The parties do not dispute these standards. Rather, they disagree whether Asignacion's case provides the narrow circumstances that would

---

[18] *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004).

[19] *Id.* (citing *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 336 (5th Cir. 1976)).

[20] *Id.* at 306 (quoting *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 851 n.2 (6th Cir. 1996)).

[21] *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (quoting *W.R. Grace & Co v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 766 (1983)) (some internal quotation marks omitted).

[22] *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1445 (11th Cir. 1998).

[23] *Cf. Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting that the federal policy in favor of arbitral dispute resolution "applies with special force in the field of international commerce").

render the arbitral award unenforceable under the Convention because it violates United States public policy.

## A

Asignacion's public-policy defense primarily turns on the adequacy of remedies under Philippine law. But at oral argument, Asignacion's counsel also urged that United States public policy requires that foreign arbitral panels give seamen an adequate choice-of-law determination; he argued that the arbitrators' exclusive reliance on the choice-of-law provision in Asignacion's contract did not constitute a choice-of-law determination, let alone a fair one.

To the extent that Asignacion's defense turns on the Philippine arbitrators' exclusive reliance on the contract's choice-of-law provision, courts are unable to correct this sort of unexceptional legal error (if one was in fact made) when reviewing an arbitral award.[24] Applying Philippine law to a Filipino seaman in Philippine arbitration, by itself, is not cause for setting aside the award, even if American choice-of-law principles would lead to the application of another nation's law.

## B

Asignacion has the burden of proving that the Convention's public-policy defense applies.[25] The Philippine arbitrators awarded Asignacion $1,870. Were he to prevail in a suit under United States general maritime law, we have little doubt his recovery would be greater.

As detailed above, the United States has a public policy strongly favoring arbitration, which "applies with special force in the field of international

---

[24] *See Karaha Bodas*, 364 F.3d at 288 ("The court may not refuse to enforce an arbitral award solely on the ground that the arbitrator may have made a mistake of law or fact."); *id.* at 290 & n.27 ("Under the New York Convention, the rulings of the [arbitrators] interpreting the parties' contract are entitled to deference.").

[25] *See id.* at 288 (citing *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 336 (5th Cir. 1976)).

commerce."[26]   On the other hand, the United States has an "explicit public policy that is well defined and dominant"[27] with respect to seamen: maritime law provides "special solicitude to seamen."[28]   Seamen have long been treated as "wards of admiralty,"[29] and the causes of action and the remedies available to seamen reflect this special status.[30]   In addition to the foundational policies favoring arbitration and protecting seamen, other policies concerning international dispute resolution weigh in our decision.

The Supreme Court has rejected the "concept that all disputes must be resolved under our laws and in our courts,"[31] even when remedies under foreign law do not comport with American standards of justice.  The Supreme Court has stated: "To determine that American standards of fairness . . . must [apply] demeans the standards of justice elsewhere in the world, and unnecessarily exalts the primacy of United States law over the laws of other countries."[32]   Similarly, in *Romero v. International Terminal Operating Co.*, which addressed the application of choice-of-law principles to a seaman's claim, the Court stated:

> To impose on ships the duty of shifting from one standard of
> compensation to another as the vessel passes the boundaries of

---

[26] *Mitsubishi*, 473 U.S. at 631 (1985).

[27] *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (internal quotation marks omitted).

[28] *Miles v. Melrose*, 882 F.2d 976, 987 (5th Cir. 1989).

[29] *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971).

[30] *See Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960) (noting that unseaworthiness liability is not tied to negligence); *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 725-26 (5th Cir. 2013) (noting that the right to maintenance and cure cannot be "contracted away by the seaman, does not depend on the fault of the employer, and is not reduced for the seaman's contributory negligence" (footnotes omitted)).

[31] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972).

[32] *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 517 n.11 (1974) (citation and internal quotation marks omitted); *see also Haynsworth v. The Corporation*, 121 F.3d 956, 966 (5th Cir. 1997).

territorial waters would be not only an onerous but also an unduly speculative burden, disruptive of international commerce and without basis in the expressed policies of this country. The *amount and type of recovery which a foreign seaman may receive* from his foreign employer while sailing on a foreign ship should not depend on the wholly fortuitous circumstance of the place of injury.[33]

Therefore, even with regard to foreign seamen, United States public policy does not necessarily disfavor lesser or different remedies under foreign law.

The importance of the POEA Standard Terms to the Philippine economy also weighs in favor of enforcement. As the Ninth Circuit has noted, "[a]rbitration of all claims by Filipino overseas seafarers is an integral part of the POEA's mandate to promote and monitor the overseas employment of Filipinos and safeguard their interests."[34] Asignacion points out, correctly, that the Convention directs a court to consider the public policy of the country in which it sits,[35] not the public policy of the arbitral forum. But, while Philippine public policy does not apply of its own force, our analysis of a foreign arbitral award is colored by "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes . . . even assuming that a contrary result would be forthcoming in a domestic context."[36]

---

[33] 358 U.S. 354, 384 (1989) (emphasis added).

[34] *Balen v. Holland America Line, Inc.,* 583 F.3d 647, 651 (9th Cir. 2009); *see also Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 221 n.25 (5th Cir. 1998) ("The effect of POEA intervention in employment contracts is to shift the balance of power slightly in favor of the employee in much the same way that a labor union or legislative enactment of minimum work standards increases the level of protection for employees in the United States.").

[35] Convention art. V(2)(b).

[36] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 629 (1985).

Asignacion maintains that in particularly egregious circumstances, a United States court may apply our choice-of-law and forum-selection laws as a means of implementing the Convention's public-policy defense and refusing to enforce an award.

The seminal maritime-injuries choice-of-law case is *Lauritzen v. Larsen*.[37] In *Lauritzen*, a Danish seaman injured in Cuba aboard a Danish-owned and flagged ship brought suit in the United States.[38] The seaman's contract provided that Danish law applied.[39] Unlike United States law, Danish law fixed maintenance and cure to a twelve-week period and provided a no-fault compensation scheme "similar to [American] workmen's compensation."[40] The Court enumerated a seven-factor test to determine choice of law[41] but also commented that "[e]xcept as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply."[42] The Court then cautioned that "a different result would follow if the contract attempted to avoid applicable law," such as applying foreign law to a United States flagged ship.[43] The Court thus had little hesitation applying the contracted-for Danish law, as the law of the ship's flag.[44]

---

[37] 345 U.S. 571 (1953).

[38] *Id.* at 573.

[39] *Id.*

[40] *Id.* at 575-76.

[41] *See id.* at 583-92 ((1) place of injury; (2) the vessel's flag; (3) plaintiff's domicile or allegiance; (4) shipowner's allegiance; (5) place of contract; (6) inaccessibility of a foreign forum; and (7) law of the forum); *see also Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970) (noting the *Lauritzen* factors are not exhaustive and considered the shipowner's base of operations).

[42] *Lauritzen*, 345 U.S. at 588-89.

[43] *Id.* at 589.

[44] *Id.* at 588-89.

*Lauritzen*'s rule—that contractual choice-of-law provisions for foreign seamen are generally enforceable—favors Rickmers. However, the reach of the exception—which condemns a choice-of-law provision that attempts to "avoid applicable law"—is less clear. On one hand, Rickmers did little, if anything, to avoid applicable law through its contract with Asignacion. Rickmers had no say in the choice-of-law provision; POEA's Standard Terms mandated Philippine law. On the other hand, the Philippine government has arguably attempted to avoid the application of foreign law to its seamen. But it is far from certain that the *Lauritzen* Court condemned such choice-of-law clauses mandated by a foreign sovereign rather than a party to the contract.

Several cases from our court have ordered that a Filipino seamen's claims be resolved in Philippine arbitration or under Philippine law. Rickmers argues that these cases establish that applying Philippine law to Asignacion's claims does not violate public policy. Many of these cases simply weigh the *Lauritzen–Rhoditis* factors without addressing any public-policy concerns.[45] The decisions that reach public-policy considerations address policies irrelevant to the remedies at issue in the present case.[46]

Our decision in *Calix-Chacon v. Global International Marine, Inc.*[47] addressed the question of reduced remedies in foreign law. In *Calix-Chacon*, a

---

[45] *See Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 722-23 (5th Cir. 1990); *Cuevas v. Reading & Bates Corp.*, 770 F.2d 1371, 1378-79 (5th Cir. 1985), *abrogated on other grounds by In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987) (en banc).

[46] *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 900, 906 (5th Cir. 2005) (rejecting a public-policy challenge to Philippine arbitration based on Louisiana's policy disfavoring forum-selection clauses in employment litigation); *Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216, 219-21 (5th Cir. 1998) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)) (rejecting a challenge to contracts containing the POEA Standard Terms because individual Filipino seamen lacked bargaining power); *cf. Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 277-78 (5th Cir. 2002) (upholding an order to arbitrate in the Philippines and finding that the *suspension* of a Philippine law that would have otherwise limited remedies did not compel against arbitration).

[47] 493 F.3d 507 (5th Cir. 2007).

No. 14-30132

Honduran seaman signed a contract providing that Honduran law would apply and specifying a Honduran forum.[48] He brought a claim in an American court for maintenance and cure, and the district court held the forum-selection clause unenforceable on public-policy grounds because both general maritime law and the Shipowner's Liability Convention of 1936 (Shipowner's Convention) "express[ed] a strong public policy" against abridging maintenance and cure liability in contract.[49] On appeal, we concluded that under our precedents, the Shipowner's Convention did not require us to invalidate a foreign forum-selection clause when foreign law imposed a lower standard of care.[50] We vacated the district court's decision because it relied on the Shipowner's Convention and remanded for further analysis of the public-policy question under the general maritime law.[51]

In *Calix-Chacon*, we expressly refrained from addressing the general maritime law's weight in the public-policy analysis. Nonetheless, our conclusion that the Shipowner's Convention did not, as a matter of policy, prevail over a reduced standard of care in Honduran law, suggests we should be reluctant to conclude that lesser remedies make an award unenforceable on policy grounds.

In *Aggarao v. MOL Ship Management Co.*,[52] the District of Maryland, relying on the district court's decision in the present case, refused to enforce a Filipino seaman's arbitral award. The Philippine arbitrators determined that Aggarao had a Grade 1 disability—the highest grade under the POEA contract—and awarded him $89,100 in disability benefits, sick pay, and

---

[48] *Id.* at 509.

[49] *Id.* at 510.

[50] *Id.* at 514 (citing *In re McClelland Eng'rs, Inc.* 742 F.2d 837, 839 (5th Cir. 1984)).

[51] *Id.*

[52] Civ. No. CCB–09–3106, 2014 WL 3894079 (D. Md. Aug. 7, 2014).

attorney's fees.[53]  The district court found that Aggarao had over $700,000 in unpaid medical debts, had to forgo necessary treatments, and would require lifetime care.[54]    The Maryland district court found that Aggarao's limited remedies under the POEA contract violated public policy and refused to enforce the arbitral award.[55]

Asignacion contends that *Aggarao* is on all fours with his claims.  We disagree.  Unlike in *Aggarao*, the arbitrators found that Asignacion had a Grade 14 disability—the lowest compensable grade—and the district court made no findings related to the adequacy of the award vis-à-vis Asignacion's lasting injuries or unmet medical expenses.  Rather, the district court only determined that the arbitration and award "effective[ly] deni[ed]" Asignacion the right to pursue his general maritime remedies.  But that finding is insufficient to support the conclusion that the public policy of the United States requires refusing to enforce the award.

Asignacion's arbitral award does not represent the sum total of Rickmers's obligation to Asignacion under the POEA Standard Terms contract. Section 20(B) required Rickmers to pay Asignacion's medical costs until he was repatriated to the Philippines and his disability level was established.  There is no dispute that Rickmers met its obligations under Section 20(B).  At oral argument, Asignacion's counsel represents that he has incurred medical expenses after Rickmers's Section 20(B) obligation terminated.  But our careful review of the record has found no evidence that the Philippine arbitral award was inadequate relative to Asignacion's unmet medical needs, let alone so inadequate as to violate this nation's "most basic notions of morality and

---

[53] *Id.* at *6-7.

[54] *Id.* at *5.

[55] *Id.* at *14.

justice."[56]   We conclude that the district court erred in determining that Asignacion's award violated the public policy of the United States.

C

Finally, Rickmers contends that the district court erred by also relying on the prospective-waiver doctrine to refuse to recognize the Philippine arbitral award.  We agree.

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the Supreme Court addressed a district court's enforcement of an agreement to arbitrate, which forced an auto dealer to arbitrate its antitrust claims under the Sherman Act, 15 U.S.C. § 1 *et seq.*, in Japan.[57]  The Court commented, in dictum, that "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."[58]  Similarly, in *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, the Court, again in dictum, suggested that *Mitsubishi*'s prospective-waiver doctrine might apply to contracts under the Carriage of Goods by Sea Act, 46 U.S.C. app. § 1300 *et seq.*[59]  In both cases, the Court declined to apply the doctrine, in part, because it would be premature to do so; each case addressed the enforceability of an agreement to arbitrate, as opposed to awards in which the arbitrators actually failed to address causes of action under American statutes.[60]

---

[56] *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) (quoting *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 851 n.2 (6th Cir. 1996)).

[57] 473 U.S. 614, 619-21 (1985).

[58] *Id.* at 637 n.19.

[59] 515 U.S. 528, 540-41 (1995).

[60] *See Mitsubishi*, 473 U.S. at 637 n.19; *Vimar*, 515 U.S. at 540.

The present case is at the award-enforcement stage, unlike *Mitsubishi* and *Vimar*, and the district court applied the prospective-waiver doctrine. The district court noted that the antitrust laws in *Mitsubishi* and COGSA in *Vimar* applied to "business disputes between sophisticated parties." Because seamen are afforded special protections under United States law, unlike sophisticated parties, the district court concluded that the prospective-waiver doctrine prevented the enforcement of the Philippine arbitral award.

However, the prospective-waiver doctrine is limited to statutory rights and remedies. From *Mitsubishi* onwards, the Supreme Court has referred only to "statutory" rights and remedies when discussing the doctrine.[61] The Court recently continued that phrasing in *American Express Co. v. Italian Colors Restaurant*, where the Court refused to apply the doctrine to a waiver of class arbitration.[62] The Supreme Court has not extended the prospective-waiver doctrine beyond statutory rights and remedies. The district court therefore erred when it relied on the doctrine to afford Asignacion an opportunity to pursue his claims under the general maritime law. Additionally, to apply that doctrine in every case in which a seaman agreed to a choice-of-law provision that would result in lesser remedies than those available under laws of the United States would be at odds with the rationale of the Supreme Court's

---

[61] *See Mitsubishi*, 473 U.S. at 637 ("so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum"); *id.* at 637 n.19 ("take cognizance of the statutory cause of action"); *id.* ("right to pursue statutory remedies"); *see also Vimar*, 515 U.S. at 540 ("right to pursue statutory remedies" (quoting *Mitsubishi*, 473 U.S. at 637 n.19)).

[62] *See* 133 S. Ct. at 2310 (2013) ("agreement forbidding the assertion of certain statutory rights"); *id.* at 2311 ("it is not worth the expense involved in *proving* a statutory remedy"); *id.* ("[i]t no more eliminates those parties' right to pursue their statutory remedy"); *see also id.* at 2319 (KAGAN, J., dissenting) (arguing that the doctrine should apply but noting that the doctrine "asks about the world today, not the world as it might have looked when Congress passed a given statute").

No. 14-30132

reasoning in *Romero v. International Terminal Operating Co.*,[63] discussed above.

*    *    *

For the foregoing reasons, we REVERSE the order of the district court and REMAND for the district court to enforce the arbitral award.

---

[63] 358 U.S. 354, 384 (1989).

17