Emmanuel NAVARETTE, Plaintiff,

v.

SILVERSEA CRUISES LTD., Silver Spirit Shipping Co. Ltd., V. Ships Leisure LNC., V. Ships Leisure USA, Inc., V. Ships Leisure Sam, and V. Ships USA, LLC., Defendants.

CASE NO.: 14–20593–CIV–HUCK/OTAZO–REYES

United States District Court, S.D. Florida.

Signed March 07, 2016

Michael A. Winkleman, David Alexander Villarreal, Lipcon, Margulies, Alsina & Winkleman, P.A., Miami, FL, for Plaintiff.

Daniel A. Sands, Stok Folk & Kon, Aventura, FL, Darren Wayne Friedman, Jeffrey Eric Foreman, Marcus G. Mahfood, Foreman Friedman, PA, Miami, FL, for Defendants.

**1316**

### ORDER RECOGNIZING AND EN-
### FORCING INTERNATIONAL
### ARBITRATION AWARD

PAUL C. HUCK, UNITED STATES DISTRICT COURT JUDGE

THIS CAUSE came before the Court upon Plaintiff Emmanuel Navarette's ("Navarette") Motion to Vacate and/or Set Aside Philippine Arbitration Award ("Motion"), [D.E. 121], filed on November 6, 2016. Navarette filed this Motion to set aside the arbitral award on public policy grounds. Defendant Silversea Cruises, Ltd. ("Silversea") has challenged Navarette's rationale for setting aside the award, and in turn has filed a cross-motion to confirm the award. (Defendant's Motion to Recognize and Enforce Arbitral Award ("Cross–Motion"), [D.E. 128] ). Navarette and Silversea (collectively the "Parties") both filed responses to the other's motion and both filed replies to the other's response. (See D.E.s 130, 136, 137, 142). The Court being duly advised, denies Navarette's Motion and correspondingly grants Silversea's Cross–Motion to confirm the award, because Navarette failed to allege an adequate basis to set aside the award.

## I. FACTUAL BACKGROUND

Navarette, a Philippine citizen and domiciliary, was injured while working for Silversea aboard the M/V Silver Spirit during mooring operations in St. Maarten. Silversea is organized under Bahamian law and headquartered in Monaco. The M/V Silver Spirit sails under the Bahamian flag. At the time of his injuries, Navarette's employment was governed by the terms of a standard employment contract, ("Employment Agreement") approved by the Philippine Overseas Employment Administration (the "POEA"), a Philippine government agency. Navarette entered into the Employment Agreement in the Philippines. In accordance with the Employment Agreement, the Court compelled the Parties to arbitration in the Philippines. (See Order Compelling Arbitration, D.E. 104). The Parties arbitrated in the Philippines before the Labor Arbiter. Navarette sought the application of U.S. law and recovery under the Jones Act, 46 U.S.C. § 30104. The Arbiter rejected Navarette's Jones Act claim and awarded Navarette damages under the POEA regime. (See Arbitration Decision, D.E. 121–4, "Philippine Arbitration Award").

Navarette moved to vacate the Philippine Arbitration Award. Silversea then filed its motion seeking recognition and enforcement of the Philippine Arbitration Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), 21 U.S.T. 2517, as implemented by 9 U.S.C. § 201 et seq.[1]

## II. STANDARD OF REVIEW

The Convention empowers a federal district court to recognize and enforce an action falling under the Convention. See 9 U.S.C. §§ 203, 207. Chapter 2 of the Federal Arbitration Act incorporates the Convention into federal law to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are ob-

---

1. Many courts, including this one, have found that the Convention does not authorize actions to vacate arbitration awards; rather, a court may only refuse to confirm an arbitral award. See, e.g., Gonsalvez v. Celebrity Cruises, Inc., 935 F.Supp.2d 1325, 1330 (S.D.Fla. 2013) (collecting cases), aff'd, 750 F.3d 1195 (11th Cir.2013). As the Court already has jurisdiction in this matter, is simultaneously considering the Cross–Motion pursuant to 9 U.S.C. § 207, and the Parties incorporate their respective arguments in addressing both motions, it is unnecessary to reach this issue separately.

served and arbitral awards are enforced ...." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *see also Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 267 F.Supp.2d 1335, 1343 (S.D.Fla.2003) (holding that the "goal of the Convention ... was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts"), *abrogated on other grounds*, 377 F.3d 1164, 1165 (11th Cir.2004).

The federal court should confirm an arbitral award unless a respondent can successfully assert one of seven defenses against enforcement. *See* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."); *Imperial Ethiopian Gov't v. Baruch–Foster Corp.*, 535 F.2d 334, 335–36 (5th Cir.1976).[2] One such defense against enforcement, and one relevant to the subsequent analysis in this case states, an award may be set aside if "recognition or enforcement of the award would be contrary to the public policy" of the United States. Convention, art. V(2)(b); *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1198 (11th Cir.2013). "[T]he burden of proving an article V affirmative defense is on the party defending against enforcement of the award[.]" *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1294 n. 3 (11th Cir.2004) (citing *Imperial Ethiopian Gov't*, 535 F.2d at 336),

■ "When reviewing an arbitration award, '[c]onfirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm.' " *Chelsea Football Club Ltd. v. Mutu*, 849 F.Supp.2d 1341, 1344 (S.D.Fla. 2012) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir.2007)); *see also Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1015 (5th Cir.2015) (noting that courts may "vacate an arbitrator's decision only in very unusual circumstances"; that the court's "review of an award is extraordinarily narrow"; and that "a court reviewing an award under the Convention cannot refuse to enforce the award solely on the ground that the arbitrator may have made a mistake of law or fact" (internal quotation marks and citations omitted)) *cert. denied*, —— U.S. ——, 136 S.Ct. 795, 193 L.Ed.2d 764 (2016).

### III. DISCUSSION

■ Recognizing the limited review available to the Court under the Convention, the Court finds Navarette has not met his burden to establish that the award is contrary to some explicit public policy of the United States. Navarette's public policy defense relies on the assumption that Navarette is a Jones Act seaman and argues that the Labor Arbiter's failure to award damages under the Jones Act violates public policy. The Court, however, disagrees with this assumption and finds that Navarette is not a Jones Act seaman.

### a. The Philippine Arbitration Award Does Not Offend Public Policy

Simply because a foreign arbitral award provides for a smaller recovery than may have been available under United States maritime law does not necessarily mean the award violates public policy. *See Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1283 (11th Cir.2011) (rejecting the argu-

---

2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 & 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding prec-edent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

ment that "less favorable treatment in a foreign forum under foreign law" amounted to a sufficient public policy defense under article V(2)(b) of the Convention); *accord Asignacion,* 783 F.3d at 1017. Similarly, neither does the fact that United States choice-of-law principles would have led to the application of a different law. *See Asignacion,* 783 F.3d at 1016 ("Applying Philippine law to a Filipino seaman in Philippine arbitration, by itself, is not cause for setting aside the award, even if American choice-of-law principles would lead to the application of another nation's law.").

■ Rather, "arbitral awards are unenforceable on grounds that they are violative of public policy only when the award violates some 'explicit public policy' that is 'well-defined and dominant ... [and is] ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interests.'" *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434, 1445 (11th Cir.1998) (alteration in original) (quoting *Drummond Coal Co. v. United Mine Workers, District 20,* 748 F.2d 1495, 1499 (11th Cir.1984).

At issue here are two competing public policies: (1) the strong public policy favoring arbitration, which "applies with special force in the field of international commerce" (*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); and (2) the public policy to protect seamen as "wards of admiralty" (*U.S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 355, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971)). What is more, these policies must be considered in light of background principles of international comity. *See Asignacion,* 783 F.3d at 1018 ("analysis of a foreign arbitral award

is colored by 'concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes ... even assuming that a contrary result would be forthcoming in a domestic context.'" (alteration in original) (quoting *Mitsubishi,* 473 U.S. at 629, 105 S.Ct. 3346)).

In *Asignacion,* the Fifth Circuit addressed these competing public policy arguments as applied to facts very similar to those present here, and the Court finds the Fifth Circuit's analysis persuasive. *See id.* at 1017. The *Asignacion* court recognized that the POEA Employment Agreement represents a policy choice of the Philippine government, important to the Philippine economy. *See id.* at 1018. Further, the Fifth Circuit noted arbitration is an "integral part of the POEA's mandate to promote and monitor the overseas employment of Filipinos and safeguard their interests." *Id.* (quoting *Balen v. Holland Am. Line, Inc.,* 583 F.3d 647, 651 (9th Cir.2009)). Accordingly, *Asignacion* held that finding an arbitral award effectively denies the right to pursue general maritime remedies "is insufficient to support the conclusion that the public policy of the United States requires refusing to enforce the award." *Id.* at 1020.

■ *Asignacion* did not include a Jones Act claim, and the opinion contains language that statutory claims may lead to a different result. *See id.* at 1021. This does not, however, affect the conclusion here. When considering Navarette's claims, the Labor Arbiter specifically considered and rejected Navarette's Jones Act claim.[3] And even if the Court disagreed with the result, the finding by the Arbiter

---

**3.** The Labor Arbiter did not reach the merits of Navarette's Jones Act claim; rather, the Labor Arbiter found that Navarette's Jones

Act claim was improperly plead and that Navarette was not a Jones Act seaman.

that Navarette is not a Jones Act seaman does not "so offend public policy" that it should be set aside because "[a]n arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference." *Delta Air Lines v. Air Line Pilots Ass'n, Intern.*, 861 F.2d 665, 670 (11th Cir.1988). Accordingly, the Philippine Arbitral Award must be confirmed.

### b. Navarette Is Not A Jones Act Seaman.

■ Separate and apart from confirming the award based on principles of comity and the strong public policy favoring arbitration, the Court also finds that Navarette is not a Jones Act seaman. The Court, thus, confirms the Philippine Arbitration Award on this ground.

■ The Supreme Court has set out a non-exhaustive list of eight factors that should be considered in determining whether the Jones Act and the general maritime law of the United States should be applied: (1) the place of the wrongful act; (2) the flag of the ship; (3) the allegiance or domicile of the injured party; (4) the allegiance of the defendant shipowner; (5) the place of the contract between the injured party and the shipowner; (6) the accessibility of a foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations. *See Szumlicz v. Norwegian Am. Line, Inc.*, 698 F.2d 1192, 1195 (11th Cir.1983) (citing *Lauritzen v. Larsen*, 345 U.S. 571, 573, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252, (1970)).

The facts alleged by the Parties here show no real disagreement regarding the first six factors, which all weigh against the application of the Jones Act to Navarette's claims: (1) the wrongful act took place in St. Maarten[4]; (2) the ship sails under the Bahamian flag; (3) Navarette is Philippine citizen, domiciled in the Philippines; (4) Silversea, the shipowner, is a foreign business organized under the laws of the Bahamas and headquartered in Monaco; (5) the employment contract was entered into in the Philippines (and called for the application of Philippine law); and (6) the Philippine forum is accessible, as Navarette has already arbitrated his claims there.

The seventh factor, the law of this forum, "is entitled to little weight because fortuitous circumstances ... often determine the forum." *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 936 (11th Cir. 2005) (alteration in original; internal quotation marks omitted) (quoting *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1517 (11th Cir.1985). "Further, the fact that 'a law of the forum is applied to plaintiffs who voluntarily submit themselves to it is no argument for imposing the law of the forum upon those who do not.'" *Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14–CIV–60885, 2015 WL 3970546, at *10 (S.D.Fla. June 30, 2015) (quoting *Lauritzen*, 345 U.S. at 592, 73 S.Ct. 921). Thus, this factor does not warrant applying U.S. law in this case.

The eighth factor, the shipowner's base of operations, is the only factor in contention and the only factor that could justify applying United States law to Navarette's claim. While some Courts have found that

---

4. The place of the wrongful act is not necessarily where the injury occurs, but rather where the negligence occurs. *See Lauritzen*, 345 U.S. at 583, 73 S.Ct. 921 (holding that the place of the wrongful act is "the place where the acts giving rise to the liability occurred"). Because neither of the Parties alleges that the negligence occurred anywhere other than where the injury occurred, the Court accepts that the wrongful act occurred in St. Maarten.

this "base of operations" factor alone can provide adequate grounds for applying the Jones Act or general United States maritime law *(see, e.g., Szumlicz,* 698 F.2d at 1195–96), this factor is still not determinative. *See Tarasewicz,* 2015 WL 3970546, at *11 ("Case law cautions that the base of operations factor should not be dispositive of the choice of law inquiry." (citations omitted)).

Navarette's allegations are insufficient to establish that Silversea's base of operations is in the United States. Navarette establishes only that Silversea maintains an office in Fort Lauderdale [5]; some of its ships visit U.S. ports, including three ships that are home ported in Port Everglades during the winter months; and that Silversea's passenger tickets contain a forum selection clause requiring passenger injury claims to be brought in the United States District Court for the Southern District of Florida.

Silversea, on the other hand, provides evidence that Silversea is headquartered in Monaco, with all operations and management decisions coming from Monaco, and with the Fort Lauderdale office merely handling marketing and sales activities for the Americas. Under these facts, the Court finds Monaco to be Silversea's base of operations. Moreover, Silversea's operations in the United States are not substantial enough, even if they could be characterized as a base of operations, to outweigh the remaining seven *Lauritzen* factors. Accordingly, Navarette is not a Jones Act seaman. *See Cooper v. Meridian Yachts, Ltd.,* 575 F.3d 1151, 1178–79 (11th Cir.2009) (finding no U.S. base of operations, despite U.S. ownership and domicile of defendants' president, because there was no evidence that defendants made management decisions, conducted operations, or generated revenue in the United States); *Sigalas v. Lido Mar., Inc.,* 776 F.2d 1512, 1518 (11th Cir.1985) (finding no U.S. base of operations where the vessels called at American ports and the shipowner earned 90% of its revenue from American sales, but did not run its day-to-day operations from the United States).

## IV. CONCLUSION

The award was determined by an arbitrator in accordance with the regime established by the POEA. The Labor Arbiter's rationale and award do not violate the public policy of this jurisdiction. Therefore it is

ADJUDGED that the arbitration award is CONFIRMED. Navarette's Motion [D.E. 121] is DENIED, and Silversea's Cross–Motion [D.E. 128] is GRANTED.

DONE AND ORDERED in chambers in Miami, Florida this 7th day of March, 2016.

---

**5.** Navarette attaches Silversea's "2015 Foreign Profit Corporation Annual Report" filed with the Florida Secretary of State, which lists the Fort Lauderdale address under "Current Principal Place of Business." (D.E. 121–12). This same document lists Monaco addresses for both the two corporate directors. This document registers a foreign corporation with the Florida Secretary of States and provides a registered agent for service of process on the entity within this state; it does not establish a base of operations. Navarette also attached the annual report from 1996. (D.E. 121–13). This also does not establish a base of operations.