[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10914
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 5, 2012
JOHN LEY
CLERK

D. C. Docket No. 1:09-cv-23078-PCH

INGASEOSAS INTERNATIONAL CO.,

Petitioner-Appellant,

versus

ACONCAGUA INVESTING LTD.,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 5, 2012)

Before EDMONDSON and ANDERSON, Circuit Judges, and EDENFIELD,*
District Judge.

PER CURIAM:

_____
        * Honorable B. Avant Edenfield, United States District Judge for the Southern District of
Georgia, sitting by designation.

This is an appeal from the district court's order dismissing a petition to vacate an international arbitration award that has already been confirmed in a final judgment and fully satisfied in the British Virgin Islands. The facts of this case are undisputed, and our holding is limited to these particular facts. After careful review, we affirm the district court's judgment.

I.

Ingaseosas International Co. ("IIC") and Aconcagua Investing Ltd. ("AIL") are both British Virgin Islands companies with principal places of business in the British Virgin Islands. In February of 2008, IIC agreed to sell AIL shares it owned in another British Virgin Islands corporation with Coca-Cola Bottling Company franchise rights. Their stock purchase agreement provided that IIC and AIL would resolve any disputes through a final, binding arbitration to be seated in Miami, Florida, and governed by New York law. The transaction contemplated by the stock purchase agreement did not close as planned. In October of 2008, claiming breach of contract, AIL initiated an arbitration proceeding against IIC in Miami; IIC, represented by counsel, filed a counterclaim with the arbitrator against AIL. The parties participated in an arbitration hearing. On August 20, 2009, the arbitrator issued his final award, requiring IIC to pay approximately $11 million to AIL within thirty days.

2

By the expiration of the thirty-day period, IIC had not paid AIL the amount required by the arbitration award. Therefore, on September 22, 2009, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, opened for signature June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention" or "Convention"), AIL applied to the High Court of the British Virgin Islands ("BVI court") to enforce the award and incorporate it into a judgment.[1] In response, on October 14, 2009, IIC filed a motion to vacate the arbitration award in the district court.[2]

IIC notified the BVI court of the vacatur proceedings, and in response to a request by IIC, the BVI court stayed the enforcement action for one week, until November 12, 2009. The BVI court's order stated that if IIC provided security in the amount of approximately $7 million, the stay "would continue until the determination of [IIC's] Motion to Vacate the Arbitration Award" in the district court.[3] IIC chose not to pay the security and chose not to appeal the BVI court

---

[1]     It is undisputed that AIL properly sought enforcement of the award in the BVI court. Under the terms of the New York Convention, AIL could have filed an enforcement action in any of the over 140 contracting states, other than any state where the award was rendered or where the award is "considered as domestic." See Convention, Art. 1.

[2]     Notably, the BVI court had scheduled a hearing on AIL's application to enforce the award for October 15, 2009. As such, IIC's initial vacatur petition was filed one day before the hearing on AIL's enforcement application.

[3]     After refusing to sell the bottling company stock to AIL, thus breaching its contract of sale with AIL, IIC sold that stock to a third party for approximately $13 million. The

3

order requiring it. Accordingly, the stay was lifted, and on November 12, 2009, the BVI court entered an order granting AIL leave to enforce the final arbitral award and a judgment in favor of AIL and against IIC in the same terms as that award. IIC again opted not to appeal. On November 30, 2009, AIL filed in the district court its opposition to IIC's motion to vacate, as well as a cross-motion seeking confirmation of the award.

When IIC refused to pay the final judgment, AIL requested that the BVI court appoint liquidators for IIC in order to secure payment. IIC again moved for a stay of the BVI proceedings pending the vacatur action in the district court.[4] On January 25, 2010, the BVI court declined to order a stay and appointed liquidators for IIC. IIC did not appeal the BVI court's denial of its second request for a stay or the court's appointment of liquidators.

On February 4, 2010, the district court held a status conference "to discuss how best to proceed on the cross-motions to vacate/confirm the arbitral award in this case." The liquidators hired new, independent counsel who appeared at the

---

amount of the bond required by the BVI court corresponded with an installment payment that IIC was scheduled to receive at that time from the new purchaser.

[4] There is nothing in the record or the parties' briefs to suggest that IIC indicated any readiness to give appropriate security at that time.

4

status conference on their behalf.[5]  The liquidators' counsel informed the district

court of the liquidation, explaining that the liquidators needed time to evaluate the

merits of IIC's petition to vacate the award in order to determine whether it would

be worth the time, effort, and money to pursue IIC's claim.  Accordingly, at the

request of the liquidators and with the consent of all parties present, the district

court stayed the case in order to allow the liquidators time to decide how to

proceed.  The district court's order explained that the case could be reopened by

an appropriate motion from either party.  Upon review, the liquidators' counsel

ultimately advised the liquidators that the prospects of success of IIC's motion to

vacate were "exceedingly low."  As such, the liquidators never sought to lift the

stay in the district court case.  Rather, they proceeded, pursuant to the mandate of

the BVI court, to liquidate sufficient assets of IIC to satisfy IIC's liability to AIL.

One of IIC's shareholders requested permission from the BVI court to

assume control over the motion to vacate pending in the district court.  The court

denied this request, specifically noting that AIL "holds an unappealed judgment"

that the court believed "creates an estoppel against the company in this

---

[5]  According to an order of the BVI court, IIC's original counsel, who is also the company's current (post-liquidation) counsel, attempted to persuade the liquidators to refrain from informing the district court that IIC had been placed in liquidation.  It was for this reason that the liquidators secured replacement counsel.  IIC's original counsel nevertheless attended the status conference.

5

jurisdiction." According to the BVI court:

> Even if the company did succeed in setting aside the award in Florida, it would still remain a judgment debtor here. . . . No reason is advanced why the fact that the award had been set aside in Florida should be capable of having any impact upon the judgment obtained here. Any suggestion that it might seems to me to be inconsistent with the principles underlying the enforcement of New York Convention awards.

The court pointed out that nobody had suggested that the granting of AIL's enforcement application was flawed. In sum, the BVI court was unwilling to allow IIC's shareholder to prosecute the motion to vacate in the district court because, "even on the assumption that, contrary to the advice received by the joint liquidators, the motion will succeed, . . . that [motion] would have no impact on [AIL's] status as a judgment creditor."[6] Nevertheless, in order to ensure no prejudice to IIC's position in the district court, the BVI court directed the liquidators not to discontinue the vacatur proceedings.

Despite IIC's resistance,[7] the liquidators were able to collect sufficient funds to cover AIL's judgment. As noted above, after refusing to sell the bottling

---

[6]     The BVI court noted that "if the award were to be set aside for fraud or mistake" the outcome could be different. However, the court continued to explain: "[IIC] has not (or has not yet) suggested that."

[7]     According to the BVI court, IIC threatened to sue the liquidators for illegally assisting AIL and damaging IIC. IIC also refused to disclose certain information to the liquidators that they were unconditionally entitled to, and it attempted to persuade the new purchaser of the shares in the bottling company not to pay.

6

company stock to AIL, thus breaching the contract with AIL, IIC sold the stock to a third party. The liquidators were able to consummate that sale, and the liquidators received from the new purchaser sufficient funds to pay off IIC's $11 million liability to AIL, thereby satisfying the BVI court judgment. After the judgment was paid, IIC was taken out of liquidation, as the company turned out to be solvent. At that point, IIC's administration was returned to its board of directors.

Subsequently, on December 7, 2010, IIC moved to reopen the vacatur proceedings in the district court. AIL opposed reopening the case and filed a cross-motion to dismiss the petition to vacate the award. AIL argued that the district court was without subject matter jurisdiction to consider the vacatur motion and that IIC was engaging in futile post-arbitration litigation. On January 13, 2011, the district court held a hearing on IIC's motion to reopen the case. The court lifted the stay; however, on February 10, 2011, it granted AIL's motion to dismiss. The court held that, although it would have had jurisdiction over a motion to enforce the award, 9 U.S.C. § 203 did not provide subject matter jurisdiction over the motion to vacate it.

## II.

We affirm the district court's dismissal of this case, although we rely upon a

7

different ground. We conclude that events have transpired such that the district court is unable to grant IIC effective relief, and thus the case is moot. See C&C Prods., Inc. v. Messick, 700 F.2d 635, 636 (11th Cir. 1983) ("If later events preclude the grant of effective relief, the appeal must be dismissed as moot."); In re Club Assocs., 956 F.2d 1065, 1069 (11th Cir. 1992) ("Central to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief.").

After AIL filed a motion to confirm and enforce the arbitration award in the BVI court, IIC initiated the instant action in the district court by filing a motion to vacate the award. Subsequent thereto, however, the BVI court provided an opportunity for IIC to stay the enforcement proceedings pending the results of the district court action, upon posting bond. After IIC failed to post bond, the BVI court proceeded and enforced the award, reduced it to a judgment in favor of AIL, and appointed liquidators of IIC who liquidated the assets of IIC and then paid the judgment in full. IIC, which was represented by counsel throughout all the proceedings before the arbitrators and before the BVI court, never appealed the BVI court's decisions.[8] Thus, subsequent to the filing of IIC's motion to vacate

---

[8] To recap, IIC did not appeal the BVI court's requirement of a bond to continue a stay of its proceedings pending those in the district court, the amount of the bond, the enforcement of the award, the appointment of liquidators, or the ultimate satisfaction of the

8

and during the pendency of the instant action, the BVI court enforced the arbitral award at issue by entering a final, unappealed judgment against IIC and in favor of AIL, and that judgment—which incorporated the terms of the arbitration award—was fully satisfied by IIC.

Although the mootness question was litigated in the district court and briefed in the initial briefing on appeal, and despite intensive questioning at oral argument and an opportunity for additional, supplementary briefing in this Court, IIC has failed to cite any precedent or authority that would enable the district court to provide effective relief under the circumstances. After extensive research, we too have found no such precedent. To the contrary, our research uncovered the following case which holds that a party cannot idly stand by and allow an arbitration award to be confirmed and then seek to the vacate same. The Second Circuit decision in The Hartbridge, 57 F.2d 672 (2d Cir. 1932) (before L. Hand, Swann, and Augustus Hand, Circuit Judges) held:

> As we understand the statute a motion to confirm puts the other party to his objections. He cannot idly stand by, allow the award to be confirmed and judgment thereon entered, and then move to vacate the award just as though no judgment existed. ... After judgment we think the award can be vacated only if the judgment can be, and to vacate the judgment an adequate excuse must be shown for not having presented objections to the award when the motion to confirm was heard.

judgment.

9

Id. at 673.[9]

IIC does not dispute the fact that the BVI court had jurisdiction to confirm and enforce the arbitration award. Nor does IIC dispute the fact that Article VI of the Convention conferred authority upon the BVI court to require bond to stay its proceedings when notified of IIC's motion to vacate the award in the district court. See Convention, Article VI. Moreover, significantly, IIC has never challenged the reasonableness of the bond required by the BVI court. Instead, the record indicates that the amount of the bond was reasonable, and that IIC had the ability to pay same. See note 3, supra. Not only did IIC fail to appeal any of the actions of the BVI court, but counsel for IIC agreed in the district court to stay the vacatur proceedings, in effect agreeing that the proceedings pursuant to the BVI court's mandate should go forward and take precedence over the vacatur proceedings in the district court.[10] IIC had ample opportunity to stay the enforcement proceedings

---

[9] Of course, The Hartbridge arose in a different context, involving a domestic arbitral award that was confirmed under the provisions of the Federal Arbitration Act. 57 F.2d at 673. That case did not involve an award that fell under the terms of the New York Convention. We nevertheless find the reasoning of The Hartbridge forceful given the facts of the case at bar.

[10] At the February 4, 2010, status conference, counsel for IIC's liquidators affirmatively requested that the district court stay the vacatur proceedings in order to allow time to evaluate IIC's petition to vacate and determine how to best proceed. Counsel for AIL consented to the stay. Notably, counsel for IIC—the corporation's pre-liquidation and current counsel—was also present at the status conference. IIC's counsel did not object to a stay or express any concern whatsoever; in fact, the transcript reveals that IIC's counsel was apparently in agreement that a stay of the district court action was appropriate. At the very least, IIC's

in the BVI court in order to proceed first with its motion to vacate in the district court, but instead, stood idly by while the arbitral award at issue in this case was confirmed, entered into a judgment, and satisfied in the British Virgin Islands.

IIC does argue that it was agreed that New York law would govern and the arbitration would take place in Miami, and does point out that the Miami district court would therefore be considered a court of "primary jurisdiction."[11] IIC then vaguely suggests that, even under the unique circumstances of this case, as the primary jurisdiction, the district court has authority to simply ignore the previous judgment of the BVI court and order effective relief notwithstanding. However, IIC has cited no case or other authority which stands for such a proposition. Our research has found none. We see nothing in the language of the Convention which suggests such a proposition. To the contrary, Article VI of the Convention

counsel, by its silence, implicitly agreed to entry of the stay. See District Court order, Docket No. 26 at 1 ("The liquidators have requested that this case be held in abeyance until he [sic] can review the matter and make a business judgment on how best to proceed, *and the parties have agreed to stay the case*.") (emphasis added).

[11] The nomenclatures of "*primary* jurisdiction" and "*secondary* jurisdiction" were developed by the Fifth Circuit in Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 367-68 (5th Cir. 2003). This terminology is used to describe the binary scheme under the New York Convention for addressing non-domestic arbitrations; the Convention assigns different roles to the courts in the country in which, or under the law of which, an award is rendered—primary-jurisdiction courts—and the courts of all other signatory countries—secondary-jurisdiction courts. Id. at 368. In short, secondary-jurisdiction courts have limited authority to review and decide whether to enforce a foreign arbitral award, while primary-jurisdiction courts have the exclusive authority to affirmatively set aside or annul the award. Id.

expressly contemplates a situation where a court of secondary jurisdiction has a pending motion to enforce an arbitration award, and where an application to set aside the award is made to a primary-jurisdiction court. In that situation, the Convention provides that the secondary-jurisdiction court "may, if it considers it proper" stay its proceedings, and may condition such a stay upon the provision of bond. See Convention, Article VI. Thus, under Article VI, although a party seeking to vacate an award in a court of primary jurisdiction should have an opportunity to stay enforcement of the award in a secondary-jurisdiction court, if that party declines to post bond, the secondary-jurisdiction court clearly has authority to proceed uninterrupted with its enforcement proceedings. The implication of Article VI is that a party who fails to post bond (and thus fails to protect its proceedings to vacate in the primary jurisdiction) risks losing the benefit of any superior force the primary jurisdiction would otherwise have had, and takes its chances in the secondary-jurisdiction court. IIC is in the shoes of the party who declined to post bond. Thus, the language of the Convention carries implications contrary to IIC's vague suggestion that the mere fact of the district court's primary-jurisdiction status makes it such that the district court can provide effective relief here notwithstanding the final, unappealed judgment enforcing the arbitration award in the BVI court.

12

It is true that the Convention "envisions multiple proceedings that address the same substantive challenges to an arbitral award." Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 367 (5th Cir. 2003). Because of this, we can imagine cases where a court of primary jurisdiction could provide effective relief by vacating an arbitral award notwithstanding an inconsistent previous decision of a secondary-jurisdiction court enforcing the award. For example, if a secondary-jurisdiction court raced to a judgment to confirm and enforce an award, if the party seeking to vacate the award in a primary-jurisdiction court was not given the opportunity to post bond and stay the enforcement proceedings in a secondary-jurisdiction court, or if the jurisdiction of the primary-jurisdiction court is otherwise usurped by a secondary-jurisdiction court, we acknowledge that a much more persuasive argument could be made and that a different outcome could be warranted. We need not—and we do not—address such a case.[12] As noted above, the facts of the instant case are the polar opposite of any such persuasive case. The facts here are unique, involving a party, IIC, who repeatedly failed to protect its rights in the BVI court, and who,

---

[12] Our opinion today should not be construed as holding that the judgment of a secondary-jurisdiction court enforcing an arbitral award automatically divests courts in the seat of the arbitration of their jurisdiction over the award—i.e., their authority to subsequently set aside or annul the award.

13

after determining that the prospects of success on its motion to vacate were "exceedingly low," actually encouraged the precedence of the BVI court proceedings (consenting to a stay in the district court, the effect of which was to allow the proceedings in the BVI court to take precedence). As in The Hartbridge, IIC simply stood idly by. 57 F.2d at 673. We cannot conclude that the fact that the district court is a court of primary jurisdiction—without more—demonstrates that there could be effective judicial relief in this case.

In attempting to demonstrate how a district court order vacating the award could provide effective relief, IIC makes a vague and conclusory assertion that, if IIC "were to decline to return the Award proceeds upon a vacatur by the Trial Court following a remand from this Court, [IIC] could seek in the BVI court an annulment of the [British Virgin Islands] judgment."[13] IIC fails to cite any precedent or authority in support of this assertion. Our own research reveals that several commentators have opined that a court of primary jurisdiction would have the power under the Convention's scheme to vacate an arbitration award notwithstanding the fact that it had previously been enforced by a court of

---

[13] IIC's suggestion that a vacatur would lead to a second arbitration in which the arbitrator could "consider[] moneys obtained by [AIL] to satisfy the Award as an element of damages flowing from the parties' contractual dispute" is wholly without merit and does not warrant extended discussion.

14

secondary jurisdiction.[14] These commentators suggest that the party, upon

obtaining such a vacatur judgment, could return to the secondary-jurisdiction court

and seek to set aside the judgment of that court which had previously enforced the

award or institute a restitution action in the enforcing court to recover amounts

paid pursuant to that judgment.[15] For several reasons, however, we do not believe

the instant case presents any possible prospect of effective relief for IIC. Most

significantly, the BVI court has already indicated that vacatur of the award in the

district court would have no effect on its final, unappealed judgment, in the

absence of fraud or mistake. And, despite ample opportunity, IIC has proffered no

facts suggesting fraud or mistake or any other possible basis for collaterally

attacking the judgment of the BVI court. Moreover, wholly aside from the

liquidators' counsel's estimation that the motion to vacate had an "exceedingly

low" prospect of success, in light of the obvious failure of IIC to protect its rights

_____

[14] Importantly, however, as one commentator has explained, such a situation "is likely not to occur" in practice because, when there are doubts about the validity of the award that could lead to a setting aside, the secondary-jurisdiction court has the power to adjourn its decision on enforcement pending a decision in the country of origin. See Albert Jan van den Berg, The New York Arbitration Convention of 1958, at 351 (1981).

[15] See, e.g., Albert Jan van den Berg, The New York Arbitration Convention of 1958, at 351 (1981); Leonard V. Quigley, Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 70 Yale L. J. 1049, 1071 (1961); Note, Michael H. Strub, Jr., Resisting Enforcement of Foreign Arbitral Awards Under Article V(1)(e) and Article VI of the New York Convention: A Proposal for Effective Guidelines, 68 Tex. L. Rev. 1031, 1062-63 (1990); W. Michael Tupman, Staying Enforcement of Arbitral Awards under the New York Convention, 3 Arb. Int'l 209, 220 (1987).

in the BVI court and its express consent in the district court that the BVI court proceedings could take precedence over those in the district court, the possibility of IIC obtaining a vacatur is extremely remote, if not non-existent. Finally, none of the above-mentioned commentators have suggested the possibility of relief in a factual situation similar to the instant unique facts.

Even if this appeal is not technically moot, we hold that it should be treated as such for prudential reasons. See Jordan v. Sosa, 654 F.3d 1012, 1033 (10th Cir. 2011) ("Even if we were to conclude that [the plaintiff's] claims could survive our constitutional-mootness inquiry, we would bar those claims on prudential-mootness grounds."); United States v. (Under Seal), 757 F.2d 600, 603 (4th Cir. 1985) ("Passing the possibly difficult conceptual question of whether the appeal has been mooted in constitutional case or controversy terms, we conclude that, in any event, we should treat it as moot for prudential reasons."). Pursuant to the doctrine of prudential mootness, we may exercise our discretion and decline to grant declaratory relief in the context of a controversy that has become "so attenuated that considerations of prudence and comity . . . counsel the court to stay its hand, and to withhold relief it has the power to grant." Chamber of Commerce v. U.S. Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980). The critical question becomes "whether changes in circumstances that prevailed at the beginning of the

16

litigation have forestalled any occasion for meaningful relief." Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987). As one of our sister circuits has explained:

> Where it is so unlikely that the court's grant of declaratory judgment will actually relieve the injury, the doctrine of prudential mootness—a facet of equity—comes into play. This concept is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power. Declaratory relief, like other forms of equitable relief, is discretionary. . . . Where it is uncertain that declaratory relief will benefit the party alleging injury, the court will normally refrain from exercising its equitable powers.

Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1019-20 (D.C. Cir. 1991) (citations omitted).

Even if IIC were somehow able to persuade the district court on remand to vacate the award at issue, we cannot see how an order from that court would provide IIC with any *meaningful* relief. First, it is uncertain how IIC would attempt to proceed in the event that it obtained a vacatur judgment from the district court. As a result of its own litigation decisions, IIC finds itself in this unique situation in which any effective relief is so remote. IIC has cited no authority in support of its conclusory assertion that a vacatur would enable it to seek relief in the BVI court; and it is only by our own research that we have discovered commentators opining that it is theoretically possible for a party who obtains a

17

vacatur of an already-enforced and satisfied Convention award to return to the enforcing court and file some type of restitution action.[16]  See Ali v Cangemi, 419 F.3d 722, 724 (8th Cir. 2005) (en banc) (concluding that case was "prudentially moot in light of the myriad of uncertainties").  More importantly, it is extremely unlikely—if not impossible—that IIC would be able to actually remedy its alleged injury by undoing the consequences of the final, unappealed (and fully satisfied) judgment of the BVI court.[17]  As discussed, IIC did not take advantage of the

---

[16]    Some courts have found that, pursuant to the express terms of the Convention, a secondary-jurisdiction court has discretion to enforce an award even when there has been a prior annulment of the award in the primary-jurisdiction court.  See, e.g., Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 369 (5th Cir. 2003) ("As an enforcement jurisdiction, our courts have discretion under the Convention to enforce an award despite annulment in another country, and have exercised that discretion in the past.").  The authorities are split on this point.  See 2 Gary B. Born, International Commercial Arbitration 2675-99 (2009) (laying out split of authority among courts and commentators and analyzing strength of various approaches); Termorio S.A. v. Electranta S.P., 487 F.3d 928, 936 (D.C. Cir. 2007) (concluding that Convention includes a "principal precept" that "an arbitration award does not exist to be enforced in other Contracting States if it has been lawfully 'set aside' by a competent authority in the State in which it was made"); Chromalloy Aeroservices. v. Arab Republic of Egypt, 939 F. Supp. 907, 909 (D.D.C. 1996) (holding that, as a secondary-jurisdiction court, court had discretion to recognize and enforce an arbitral award notwithstanding a previous set-aside of the award by a court in the seat of the arbitration).  Whether a secondary-jurisdiction court has discretion to enforce an award that has already been set aside in the primary jurisdiction, or under what circumstances enforcement of an already-vacated award could be appropriate, are questions that are not before us.  Nevertheless, the notion that the Convention may grant the BVI court discretion to enforce an award vacated in the primary jurisdiction—even where, unlike this case, the vacatur *precedes* the enforcement application—adds an additional layer of uncertainty to any effective relief for IIC.

[17]    We note this Court's prior statement in B.L. Harbert International, LLC v. Hercules Steel Co., 441 F.3d 905 (11th Cir. 2006):  "When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken.  Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual

18

opportunity to obtain a stay of the enforcement proceedings pending a decision on its motion to vacate and actually encouraged the enforcement proceedings in the BVI court to take precedence; and furthermore, the BVI court has already indicated that a subsequent vacatur of the award in the district court would not have any impact on that court's judgment or AIL's status as a judgment creditor.[18] Under the circumstances, it is plainly "uncertain that declaratory relief will benefit the party alleging injury." Penthouse, 939 F.2d at 1020. Considerations of international comity and prudence counsel that we stay our hand and withhold IIC's requested declaratory relief, and we hold that the instant case is prudentially moot.

---

cases. The more cases there are, like this one, in which the arbitrator is only the first stop along the way, the less arbitration there will be. If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later." Id. at 913.

[18] Our concerns parallel those that typically arise in the context of a bankruptcy appeal in which a court is asked to determine whether a "reorganization plan has been so substantially consummated that effective relief is no longer available." In re Club Assocs., 956 F.2d 1065, 1069 (11th Cir. 1992) (quotations omitted). In that context, "[t]he mootness inquiry necessarily involves many subsidiary questions," including whether a stay pending appeal has been obtained, and if not, why not. Id. at 1069 n.11. Although the failure to obtain a stay pending appeal in the bankruptcy court will not necessarily preclude appellate review, we have held that it is relevant to the court's "equities determination which underlay the mootness inquiry." Id. at 1070; see also In re Winn-Dixie Store, Inc., 286 Fed. App'x 619, 622-23 (11th Cir. 2008) (unpublished) (considering party's failure to seek a stay of confirmation order pending appeal when analyzing the doctrine of "equitable mootness"); In re Healthco Int'l, Inc., 136 F.3d 45, 48 (1st Cir. 1998) ("The 'equitable' mootness test inquires whether an unwarranted or repeated failure to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible.").

19

## III.

For the foregoing reasons, under the particular and unique facts of the instant case, we cannot conclude that the district court can provide effective judicial relief to IIC. We therefore hold that the case is moot.

AFFIRMED.