**Sladjana CVORO, Plaintiff,**

**v.**

**CARNIVAL CORP., d/b/a Carnival Cruise Lines, Defendant.**

**Case No. 16–21559–CIV–MORENO**

United States District Court, S.D. Florida.

Signed 1/13/2017

Filed 1/17/2017

---

Louis Anthony Vucci, Louis A. Vucci, P.A., Robert D. Peltz, The Peltz Law Firm, Sidney Arthur Goldberg, Miami, FL, for Plaintiff.

David James Horr, Ryan Matthew McCarthy, Stephanie Hurst Wylie, Horr Novak & Skipp, P.A., Miami, FL, for Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING MOTION TO DISMISS

FEDERICO A. MORENO, UNITED STATES DISTRICT JUDGE

THE MATTER was referred to the Honorable John J. O'Sullivan, United States Magistrate Judge for a Report and Recommendation on Defendant's Motion to Dismiss, filed on **June 10, 2016**. The Magistrate Judge filed a Report and Recommendation (**D.E. No.30**) filed on **November 28, 2016**. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections (D.E. No. 34) to the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, it is

**ADJUDGED** that United States Magistrate Judge John O'Sullivan's Report and Recommendation is **AFFIRMED** and **ADOPTED**. Accordingly, it is

**ADJUDGED** that the motion to dismiss is DENIED. Defendant must file an answer to the complaint by January 26, 2017. Failure to do so may result in default.

## REPORT AND RECOMMENDATION

JOHN J. O'SULLIVAN, UNITED STATES MAGISTRATE JUDGE

THIS CAUSE comes before the Court on the Defendant's Motion to Dismiss Plaintiff's Complaint (DE# 8, 6/10/16). This matter was referred to the undersigned by the Honorable Federico A. Moreno, United States District Court Judge for the Southern District of Florida pursuant to 28 U.S.C. § 636(b). (DE# 19, 7/13/16). Having reviewed the motion, response, and reply, the evidence in the record, and the applicable law, the undersigned respectfully RECOMMENDS the Defendant's Motion to Dismiss Plaintiff's Complaint (DE# 8, 6/10/16) be DENIED.

### INTRODUCTION

The plaintiff is a Serbian national who worked as an employee on the defendant's vessel, *Carnival Dream*, and sustained personal injuries as a result of the medical malpractice of a shore side physician selected by the defendant to fulfill its maintenance and cure obligations in treating her for a condition arising during her service to her vessel. Pursuant to the mandatory arbitration provision, the choice of law provision and a forum-selection clause in the parties' Seafarer Agreement, the arbitration occurred in Monaco and the arbiter applied Panamanian law. The Arbitral Award dismissed the plaintiff's claims. The plaintiff filed a three-count Complaint in this Court in May 2016. On July 7, 2016,

the defendant filed an action to enforce the Arbitral Award in Monaco.

In the present action, the plaintiff requests this Court to vacate and/or alternatively to refuse to recognize and enforce the foreign arbitral award under Article V of the Convention of Enforcement of Foreign Arbitral Awards ("Convention") on the grounds that its enforcement would be contrary to the public policy of the United States under the prospective waiver doctrine (Count I). Additionally, the plaintiff seeks damages for personal injuries for negligence under the Jones Act (Count II) and failure to provide proper and appropriate care under maritime law (Count III).

The defendant seeks dismissal of this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the following grounds: 1) the Court lacks subject matter jurisdiction over the plaintiff's vacatur as the Convention does not recognize actions for vacatur of an arbitral award and her claims for Jones Act negligence and maintenance and cure are time-barred; 2) the international abstention doctrine compels abstention in favor of the recognition proceeding in Monaco; 3) the plaintiff's claims are barred by *res judicata*; and 4) even if the plaintiff's demand for vacatur of the arbitral award is entertained on the merits, the plaintiff fails to prove any of the recognized defenses to the award under Article V of the Convention.

The plaintiff opposes the defendant's motion to dismiss and relies on Article V(2)(b) of the Convention, the Jones Act and U.S. maritime law to support the claims asserted in this action. The plaintiff contends that the crux of the issue is whether the arbiter's express refusal to consider the plaintiff's vicarious liability claim against the defendant under the Jones Act for the negligence of the shore side doctor the defendant selected to treat the plaintiff rendered the arbiter's award, which dismissed her claim, violative of U.S. public policy under the prospective waiver doctrine and/or effective vindication exception. The plaintiff argues that the arbitral award is unenforceable in the United States and that the plaintiff should be allowed to proceed with her Jones Act claim in this Court. See Convention, art. V. 2(b).

The undersigned has reviewed the defendant's motion, the plaintiff's response, the defendant's reply, the plaintiff's surreply, the defendant's notice of supplemental authority and the plaintiff's response to the defendant's notice of supplemental authority. The motion is fully briefed and ripe for disposition.

## STANDARD OF REVIEW

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. Rule 12(h)(3). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1289 (11th Cir. 2010)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). If the face of the complaint reveals that the claim is time-barred, Rule 12(b)(6) permits dismissal on statute of limitations grounds. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## ANALYSIS

### I. Subject Matter Jurisdiction

■ The defendant seeks dismissal of this action on the ground that this Court lacks subject matter jurisdiction to entertain the plaintiff's attempt to vacate the arbitral award. The defendant argues that only primary-jurisdiction courts under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York Convention (hereinafter "Convention"), have jurisdiction to vacate or modify the arbitral award. Motion at 6 (citing Gonsalvez, 935 F.Supp.2d 1325, 1330 (S.D. Fla. 2013)) (citing Ingaseosas Intern. Co. v. Aconcagua Investing Ltd., No. 09–23078–CIV, 2011 WL 500042, at *3 (S.D. Fla. Feb. 10, 2011)). The defendant's motion, however, does not discuss the fact that both the district court and the Eleventh Circuit in Gonsalvez acknowledged the split of authority regarding whether vacatur actions are proper under the Convention. Gonsalvez v. Celebrity Cruises, Inc., 935 F.Supp.2d 1325, 1331 (S.D. Fla. 2013), aff'd, 750 F.3d 1195, 1196 n.1 (11th Cir. 2013) (assuming without deciding that the Convention permits vacatur actions and affirming the dismissal because the plaintiff's vacatur action was time-barred). The defendant's reliance on B.L. Harbert Int'l v. Hercules Steel Co., 441 F.3d 905, (11th Cir. 2006) to support its argument that the Eleventh Circuit "zealously protects the goals of the Convention and vehemently prohibits parties from re-litigating their arbitration awards" is misplaced. Hercules Steele involved a domestic arbitration between United States parties under the FAA, which did not come under the Convention. Hercules Steele is inapposite. The defendant's reliance on its supplemental authorities is also misplaced as neither case involved the public policy defense under Article V(2)(b) of the Convention. See Defendant's Notice of Supplemental Authority in Support of Its Motion to Dismiss (DE# 26, 9/1/16); see also Plaintiff's Response to Defendant's Notice of Supplemental Authority (DE# 27, 9/2/16).

The plaintiff emphasizes that her Complaint in this action requests that the Court "either vacate or otherwise refuse to enforce the arbitration award and to allow the Plaintiff to proceed forward and seek redress of her Jones Act and general maritime remedies based upon Carnival's vicarious liability, which the arbiter refused to even consider." Response at 5 (DE# 12, 6/20/16)(emphasis in original). The plaintiff relies on the public policy defense in Article V(2)(b) of the Convention. Response at 6 (quoting Convention, art. V(2)(b)) (emphasis added by plaintiff).

■ The Convention "'is a multi-lateral treaty that requires courts of the signatory nation states to give effect to private agreements to arbitrate and to enforce arbitration awards made in other contracting states.'" Gonsalvez, 935 F.Supp.2d at 1330 (S.D. Fla. 2013) (quoting Thomas v. Carnival Corp., 573 F.3d 1113, 1116 (11th Cir. 2009)), aff'd, 750 F.3d 1195 (11th Cir. 2013). "The United States, a signatory to the Convention, enforces this treaty through Chapter 2 of the [Federal Arbitration Act ("FAA")], which incorporates the terms of the Convention." Id. "The Convention and Chapter 2 of the FAA exclusively govern[] arbitration between a citizen of the United States and citizens of a foreign country.'" Id. at 1329 (quoting Costa v. Celebrity Cruises, Inc., 768 F.Supp.2d 1237, 1240 (S.D. Fla. 2011), aff'd, 470 Fed. Appx. 726 (11th Cir. 2012)) (unpublished); see 9 U.S.C. § 207; Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1439–41 (11th Cir. 1998).

■ "To implement the Convention, Chapter 2 of the FAA provides two causes of action in federal court for a party seeking to enforce arbitration agreements cov-

ered by the Convention: (1) an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206, and (2) at a later stage, an action to confirm an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207." Lindo v. NCL (Bahamas), Ltd., 652 F.3d 1257 (11th Cir. 2011); Gonsalvez, 935 F.Supp.2d at 1330. The Convention provides distinct defenses for the two stages of enforcement. Id. Article II of the Convention provides defenses at the initial arbitration enforcement stage. Id. (citing Bautista v. Star Cruises, 396 F.3d 1289, 1301 (11th Cir. 2005)). Article V of the Convention provides seven defenses that are directed at courts considering whether to recognize and enforce an arbitral award at the award enforcement stage. Id. (citing Convention, art. V (enumerating seven instances where "[r]ecognition and enforcement of the award may be refused" by "the competent authority where the recognition or enforcement is sought")); and also 9 U.S.C, § 207 (providing "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention").

In the present case, the defendant did not seek recognition or enforcement in the United States. Instead, the plaintiff filed this action which asks this Court to vacate and/or refuse to recognize the arbitral award on the ground that it violates the public policy of the United States because the arbiter rejected the plaintiff's vicarious liability claims against the defendant under the Jones Act and general U.S. maritime law. While this action was pending, the defendant initiated an award enforcement action in Monaco, which remains pending.

In the present case, the plaintiff relies on the public policy defense in Article V(2)(b) which provides:

> 2. Recognition and enforcement of an arbitration award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
>
> . . .
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Convention, art. V(2)(b) (emphasis added).

In Gonsalvez, which was decided at the initial arbitration enforcement stage, the Eleventh Circuit acknowledged the split of authority identified by the district court below regarding whether the Convention permits actions to vacate arbitral awards under the Convention because the Convention "does not mention vacatur actions or what the relevant limitations period might be." [1] Gonsalvez, 750 F.3d at 1196 n. 1

---

1. The district court in Gonsalvez cited cases reflecting the split of authority. The following cases found that the court lacked jurisdiction over vacatur actions under the Convention: Ingaseosas Intern. Co. v. Aconcagua Investing Ltd., No. 09–23078–CIV, 2011 WL 500042, at *3 (S.D. Fla. Feb. 10, 2011), aff'd on other grounds, 479 Fed.Appx. 955, 959 (11th Cir. 2012) (finding case moot);Tesoro Petroleum Corp. v. Asamera (South Sumatra) Ltd., 798 F.Supp. 400, 405 (W.D. Tex. 1992); Yusuf Ahmed Alghanim & sons v. Toys "R" Us, Inc., 126 F.3d 15, 22 (2d Cir. 1997)( finding many foreign courts and commentators determined that an action to set aside an arbitral award must be brought under the domestic law of the arbitral forum and not under the Conven- tion). Other courts found that they had jurisdiction over vacatur actions under the Convention: Costa v. Celebrity Cruises, Inc., 768 F.Supp.2d 1237 (S.D. Fla. 2011), aff'd, 470 Fed.Appx. 726 (11th Cir. 2012) (unpublished); PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F.Supp.2d 631, 654 n.1 (3d Cir. 2010); Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012) (finding "subject-matter jurisdiction under 9 U.S.C. § 203, which provides federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention...."); and Hartford Fire Ins. Co. v. Lloyds Syndicate 0056 ASH, No. CIV397CV00009AVC, 1997 WL 33491787, at *3 (D. Conn. July 2,

(referencing Gonsalvez, 935 F.Supp.2d at 1330). In Gonsalvez, the district court ruled that "[a]ssuming that Plaintiffs' [vacatur] cause of action exists, the Court concludes that the FAA's three-month statute of limitations applies via the Convention's residual clause and that this action is therefore untimely." Gonsalvez, 935 F.Supp.2d at 1331. The district court dismissed the plaintiff's action and compelled arbitration. Id. at 1331, 1334. Similarly, in a footnote in Gonsalvez on appeal, the Eleventh Circuit explained that "[b]ecause resolution of that issue is not necessary for the disposition of this appeal, we assume without deciding that the Convention permits such actions [ i.e. actions to vacate an arbitration award]." Gonsalvez, 750 F.3d at 1196, n. 1.

The plaintiff relies on Pysarenko v. Carnival Corp., No. 14–20010–Civ–Moreno, 2014 WL 1745048 (S.D. Fla. Apr. 30, 2014), aff'd, 581 Fed.Appx. 844 (11th Cir. 2014), cert. denied, —— U.S. ——, 135 S.Ct. 2378, 192 L.Ed.2d 164 (2015), which involved remarkably similar facts but, like Gonsalvez, was decided at the arbitration enforcement stage rather than the award enforcement stage of the present case. In Pysarenko, the plaintiff was a Ukranian citizen living in Bulgaria, who was a sailor on the Carnival Dream, which is registered in Panama, but is based in Port Canaveral, Florida. The plaintiff asserted various claims including negligence under the Jones Act, failure to provide maintenance and cure, and failure to treat. The plaintiff in Pysarenko worked on the same vessel as the plaintiff in the present case and signed a seafarer agreement with the same relevant provisions that required disputes to be arbitrated in Monaco under Panamanian law. The district court granted the defendant's motion to compel arbi-

tration and denied the plaintiff's motion for remand to state court. The district court found the plaintiff's public policy arguments premature because the plaintiff did not "present any argument that arbitration under Panamanian law would be 'fundamentally unfair.'" Id. at *6. The district court explained that "the Court will have a later opportunity to review the arbitral award." Id.

Unlike Pysarenko, the plaintiff's public policy arguments are not premature at this award enforcement stage under the Convention. The present case presents the "later opportunity to review the arbitral award" contemplated by this Court in Pysarenko. Id. In light of this Court's decision in Pysarenko as well as the Eleventh Circuit's willingness to assume that vacatur actions are proper under the Convention in light of its awareness of the split of authority in Gonsalvez, the undersigned finds that subject matter jurisdiction exists. The Court should deny the defendant's motion to dismiss on this ground.

II. Primary Jurisdiction (Monaco) to Vacate Versus Secondary Jurisdiction (United States) to Refuse to Enforce or Recognize an Arbitral Award under the Convention.

■ The defendant argues that this Court's jurisdiction is secondary to Monaco under the Convention regarding the plaintiff's motion to vacate the arbitral award. Article V(1)(e) of the Convention provides that the "competent authority" for setting aside an arbitral award lies in the "country in which, or under the law of which, that award was made." Convention, Art. V(1)(e). The courts in the seat of the arbitration are the "primary jurisdiction" with authority to annul the award, which

1997) (finding cross-petition to vacate in opposition to Hartford's motion to confirm was

proper under the Convention).

the courts of all other signatory countries are the "secondary jurisdiction." Ingaseosas Intern. Co. v. Aconcagua Investing Ltd., 479 Fed.Appx. 955, n.11 (11th Cir. 2012) (unpublished) (explaining that "[t]his terminology is used to describe the binary scheme under the New York Convention for addressing non-domestic arbitrations; the Convention assigns different roles to the court in the country in which, or under the laws of which, an award is rendered—primary-jurisdiction courts—and the courts of all other signatory countries—secondary jurisdiction courts."). The Eleventh Circuit explained:

> In short, secondary-jurisdiction courts have limited authority to review and decide whether to enforce a foreign arbitral award, while primary-jurisdiction courts have the exclusive authority to affirmatively set aside or annul the award.

Id.

The district court in Ingaseosas determined that it did not have jurisdiction to rule upon a motion to vacate, but did not address the other relief requested in the present case, which asks this Court to refuse to recognize or enforce the arbitral award. In Ingaseosas, the Eleventh Circuit affirmed the district court's dismissal on other grounds, namely that the case was moot because the district court was unable to grant effective relief since the arbitral award had been confirmed by the primary-jurisdiction court and reduced the award to a judgment that was satisfied, and the movant failed to appeal the judgment. Id. at 959. Because the Eleventh Circuit's decision in Ingaseosas was resolved on the unique procedural facts of that case, it does not resolve the issue presented in this case.

The plaintiff filed this action in May 2016. In July 2016, the defendant filed an award enforcement action in Monaco, which remains pending. The defendant ar-

gues that the plaintiff can raise her Article V defenses and can request the primary-jurisdiction court in Monaco to vacate the arbitral award. Motion at 9 (DE# 8, 6/10/16). While this is true, it does not negate this Court's secondary-jurisdiction to refuse to recognize or enforce the arbitral award under the Convention and to allow the plaintiff to pursue her Jones Act claims if this Court determines that the arbitral award violates the public policy of the United States.

In her response, the plaintiff argues that the defendant's position regarding Article V(2)(b) of the Convention would require one to look at the public policy of Monaco, which has no relationship to this dispute or either of the parties other than being the location where the arbitration occurred pursuant to the terms of the seafarer agreement. This action involves a suit by a Serbian national employed by a Miami company on its ship sailing out of South Florida. Response at 11 (DE# 12, 6/20/16). The plaintiff contends that the defendant's position produces an absurd result that would defeat the very purpose and application of the prospective waiver doctrine set forth by the Supreme Court in Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 638, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Id.

In Mitsubishi Motors, the Supreme Court explained that a party to an arbitration agreement does not give up its statutory rights guaranteed under U.S. domestic law:

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

Mitsubishi Motors, 473 U.S. at 628, 105 S.Ct. 3346. In Mitsubishi Motors, the Supreme Court reviewed the district court's enforcement of an agreement to arbitrate which forced an auto dealer to arbitrate its antitrust claims under the Sherman Act in Japan. In Mitsubishi Motors, the claimant was concerned that the arbitration panel would apply Swiss law rather than the Sherman Act under U.S. law based on the choice of law provision in the parties' contract. The opponent conceded that the Sherman Act applied and the arbitration panel in Japan applied U.S. law.

Because the party seeking to compel arbitration in Mitsubishi Motors agreed that U.S. securities law applied, the Supreme Court did not need to determine whether the use of foreign law would have invalidated the arbitral award. In dicta, the Supreme Court warned:

> We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.

Mitsubishi Motors, 473 U.S. at 652, n. 19, 105 S.Ct. 3346. The "prospective waiver" doctrine is also referred to as the "effective vindication exception." See, Vimar Seguros Reaseguros v. M/V Sky Reefer, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); American Express Co. v. Italian Colors Restaurant, — U.S. ——, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013); see also Suazo v. NCL (Bahamas) Ltd., 822 F.3d 543 (11th Cir. May 26, 2016).

The Supreme Court expressly recognized that the federal district courts had jurisdiction to consider and enforce the application of the prospective waiver doctrine:

> Having permitted the arbitration to go forward, the national courts of the United States will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of antitrust laws has been addressed. The Convention reserves to each signatory country the right to refuse enforcement of an award where the "recognition or enforcement of the award would be contrary to the public policy of that country."

Mitsubishi Motors, 473 U.S. at 638, 105 S.Ct. 3346 (emphasis added) (quoting the Convention, Art. V(2)(b)).

In the present action, the plaintiff relies on Mitsubishi Motors to support her position that the dismissal of her Jones Act claims against the defendant for its vicarious liability of the severe injuries she sustained due to the negligence of the shoreside doctor is against the public policy of the United States.

Because this Court has jurisdiction under the Convention to determine whether to enforce or refuse to recognize a foreign arbitral award, the Court should deny the defendant's motion to dismiss on the ground that Monaco has exclusive jurisdiction to vacate the arbitral award. The plaintiff should be permitted to pursue her prospective-waiver argument regarding her Jones Act claims.

III. Abstention

 Based on the Convention's conferral of authority for a court in a signatory country to refuse to enforce or recognize an arbitral award that violates the public policy of the laws of that signatory, this Court has subject matter jurisdiction and should not abstain from considering the plaintiff's Article V(2)(b) defense in the present case. See Convention Article

V(2)(b); see, Turner Entertainment Co. v. Degeto Film GmbH, 25 F.3d 1512, 1519 (11th Cir. 1994)(discussing international abstention and explaining that comity case law considers, among other things, whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just) (citation omitted).

In Mitsubishi Motors, the Supreme Court explicitly acknowledged the importance for "the national courts of the United States" to have the opportunity at the award-enforcement stage to ensure that the legitimate interests in the enforcement of the U.S. statutory laws have been addressed in the arbitration proceeding. 473 U.S. at 638, 105 S.Ct. 3346. This Court should deny the defendant's motion to dismiss and allow the plaintiff to prove whether the arbitral award violates U.S. public policy by denying the plaintiff a specific cause of action under the Jones Act (i.e. vicarious liability of the defendant for the shore-side doctor's negligence) that was not available under Panamanian law as determined by the arbiter.

## IV. Neither Res Judicata Nor Waiver Bars the Plaintiff's Action

 The doctrine of res judicata precludes successive litigation on matters that were previously resolved. Taylor v. Sturgell, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). When the following four elements exist, res judicata bars a subsequent suit: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the same cause of action is involved in both cases; and (4) the parties, or those in privity with them, are identical in both suits. I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986). The defendant contends that the doctrine of res judicata affords preclusive effect to unconfirmed arbitration awards.

Freecharm Ltd. v. Atlas Wealth Holdings Corp., 2011 WL 4591929, 2011 U.S. Dist. LEXIS 113172 (S.D. Fla. Sept. 30, 2011); Laub v. Ross, 1992 U.S. Dist. LEXIS 21259 (S.D. Fla. 1992) ("[I]ssues submitted to arbitration cannot be re-litigated in federal court."). One of the cases cited by the defendant acknowledged that "[t]he Eleventh Circuit is silent as to whether an unconfirmed arbitration award is accorded res judicata effect." Freecharm Ltd., 2011 WL 4591929, at *5 (affirming on collateral estoppel not res judicata grounds).

The defendant argues that all four elements are present and res judicata bars this action. The defendant maintains that the arbitration and this case involve the same cause of action. Motion at 15. The plaintiff disagrees. None of the cases cited by the defendant involve a public policy challenge to an unconfirmed foreign arbitral award under the Convention.

The arbiter ruled that Panamanian law does not provide a remedy for the specific cause of action asserted by the plaintiff and dismissed the plaintiff's claim under Panamanian law. The plaintiff maintains that this case does not challenge or seek in any way to re-litigate that ruling. Rather, the plaintiff contends that the claim in this case is that "the exclusive use of Panamanian law, which the arbiter determined was required under the terms of the contract, acted to deprive the plaintiff of her U.S. statutorily guaranteed Jones Act remedies, thereby rendering the arbitration award unenforceable as being against U.S. public policy under the prospective waiver/effective vindication doctrines." Response at 18. The plaintiff argues further that "[t]his was not an issue which the arbiter decided, nor could he decide." Id. The plaintiff maintains that the arbiter never made any rulings on the merits of the plaintiff's vicarious liability claim, since

he ruled that such a cause of action did not even exist under Panamanian law.

The undersigned finds that the arbiter did not decide whether the plaintiff's inability to present her Jones Act claims in the arbitration proceeding under Panamanian law violated the United States public policy and thus, the claims are not the same. Additionally, none of the cases upon which the defendant relies are procedurally similar to the present action under the Convention. Finally, the parties have not identified any binding precedent in the Eleventh Circuit regarding the application of *res judicata* to an unconfirmed arbitral award. Accordingly, this Court should deny the defendant's motion to dismiss based on the doctrine of *res judicata*.

■ The defendant also argues that the plaintiff waived her Jones Act claims because the plaintiff abandoned other inadequate remedies under Panamanian law when the plaintiff "elected to concede defeat and insist that her only potential remedy existed under U.S. law" rather than "attempting to prove [the defendant's] liability in the arbitration." Motion at 17. The defendant argues further that the plaintiff "made no effort whatsoever to avail herself of the meaningful remedies available to her under Panama law, which include a claim of [the defendant's] direct negligence for the selection of her treating physician." Id. The defendant relies on N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1561 (11th Cir. 1990), and Research and Dev. Ctr. "Teploenergetika" LLC v. EP Int'l LLC, 182 F.Supp.3d 556, 2016 WL 1688768, at *5–6, *8, 2016 U.S. Dist. LEXIS 55843, at *19–20, 25–26 (E.D. Va. 2016), which are factually distinguishable.

The defendant cites Hunt for the general proposition that *res judicata* "applies not only to the precise legal theory but to all legal theories and claims arising out of the same nucleus of operative facts." Hunt, 891 F.2d at 1555. The court in Hunt did not involve an international arbitration or an award that the plaintiff claims is against the public policy of United States. Thus, Hunt is factually and legally distinguishable.

In EP Int'l, the court found that the party waived its public policy defense because it failed to participate in the arbitration in Russia and the issue of whether the contract violated public policy should have been raised in the arbitration.

In the present action, the arbiter expressly concluded in the final award that Panama's version of maintenance and cure did not provide for any type of damages or recovery from the employer for those injuries occurring from shore-side malpractice since Panamanian law considered them "new" injuries for which the "ship owner would have no obligation to pay maintenance or cure or disability...." Complaint, Ex. 6 ¶¶ 30–31 (DE# 1–6). The plaintiff's public policy defense is based on the Jones Act, not a contract.

The plaintiff's Jones Act claim (Count II) and her maintenance and cure claim under general U.S. maritime law (Count III) seek the same relief for the same acts. The plaintiff pleads them as separate counts because the Supreme Court ruled that "failure to treat claims" could be raised under either the Jones Act or general maritime law. Sounding Co. v. Townsend, 557 U.S. 404, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009) (holding this same cause of action exists under both the Jones Act and general maritime law). The plaintiff relies on Eleventh Circuit decisions that acknowledge that if the application of a foreign law deprives a party of a remedy, the public policy defense may be raised in an action to enforce the arbitral award. Quiroz v. MSC Mediterranean Shipping Co., 522 Fed.Appx. 655, 662 (11th Cir. 2013) (unpublished); Henriquez v. NCL (Bahamas), Ltd., 440 Fed.Appx. 714 (11th

Cir. 2011) (unpublished) (other citations omitted).

Where, as here, the plaintiff's Jones Act claim was not available under Panamanian law and the plaintiff's public policy defense could not be raised until now, the undersigned finds that the plaintiff did not waive her Jones Act claims. This Court should deny the defendant's motion to dismiss on the waiver ground.

## V. The Three–Year Statute of Limitations Does Not Bar the Plaintiff's Action

The parties agree that a three-year statute of limitations applies to the plaintiff's claims for a maritime tort. The plaintiff filed her complaint on May 2, 2016. "The plaintiff's sole claim arises from the negligence of the doctors selected by Carnival in performing her surgery—there are no claims for antecedent acts or events of any nature." Response at 20 (DE# 12, 6/20/16) (emphasis in original). Her surgery occurred on May 28, 2013. Complaint, Ex. 8 (DE# 1–8). The present action is timely filed within the applicable three year period. This Court should deny the defendant's motion to dismiss based on the statute of limitations.

## VI. The Plaintiff's Article V(2)(b) Defense Is Viable

The defendant argues that this action should be dismissed because the plaintiff fails to state a plausible Article V(2)(b) defense. Fed. R. Civ. P. 12(b)(6); Gulf Petro Trading Co. v. Nigerian Nat'l. Petroleum Corp., 512 F.3d 742, 746 (5th Cir. 2008) (affirmed dismissal for lack of subject matter jurisdiction finding that U.S. court did not have subject matter jurisdiction to vacate or modify the Swiss arbitral award rendered pursuant to the Convention and the Texas and Nigerian oil companies' contract to salvage slop oil). Gulf Petro is factually distinguishable and is not binding on this Court. In Gulf Petro, the Texas company filed an action in federal court to vacate or modify the Swiss arbitral award on the grounds that the arbitral award was rendered pursuant to fraud, bribery and corruption. Gulf Petro did not involve the public policy defense raised in the present action. The defendant contends that because the enforcement action is pending in Monaco, the public policies of the United States are not at issue. For the reasons discussed above and below, the undersigned disagrees.

Alternatively, the defendant argues that "even if the U.S. public policy is considered, Plaintiff fails to establish a sufficient violation to overcome the powerful presumption of enforcing arbitral awards." Reply at 8 (DE# 7/7/16). The defendant argues further that this Court must narrowly construe the public policy defense and apply it only where enforcement of the award "would violate the forum state's most basic notions of morality and justice." Id. at 8–9 (quoting Costa v. Celebrity Cruises, Inc., 768 F.Supp.2d 1237, 1241 (S.D. Fla. 2011), aff'd, 470 Fed.Appx. 726 (11th Cir. 2012)). That is the crux of the issue presented in this case. The public policy defense under the Convention was not implicated in Costa because only U.S. law was applied during the arbitration that occurred in Miami, Florida. Costa, 768 F.Supp.2d at 1242.

The plaintiff cites Aggarao v. MOL Ship Management Co., Ltd., 2014 WL 3894079 (D. Md. Aug. 7, 2014), which is one of the few reported cases to have actually adjudicated the application of the public policy exception to a seaman's arbitration award in the post-arbitration award enforcement stage. The Maryland district court granted the plaintiff's motion to vacate the arbitral award on the ground that it violated the public policy of the United States because the plaintiff, a seaman, was denied the opportunity to vindicate his claim for main-

tenance and cure under U.S. law. Id. at *11. The district court relied on the district court's decision in Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG, Nos. 13–0607, 13–2409, 2014 WL 632177 (E.D. La. Feb. 10, 2014), before it was reversed by the Fifth Circuit, Asignacion, 783 F.3d 1010 (5th Cir. 2015), cert. denied, —— U.S. ——, 136 S.Ct. 795, 193 L.Ed.2d 764 (2016) (finding that the Convention did not preclude enforcement of the Philippine arbitral award of only $1870 applying Philippine law to the Filipino seaman against a German vessel owner for injuries sustained when the vessel was docketed in New Orleans).

The Fifth Circuit in Asignacion acknowledged that the "United States has a public policy strongly favoring arbitration, 'which applies with special force in the field of international commerce.'" Id. at 1017 (quoting Mitsubishi Motors, 473 U.S. at 631, 105 S.Ct. 3346 (1985)). The Fifth Circuit also acknowledged that "the United States has an 'explicit public policy that is well defined and dominant' with regard to seamen: maritime law provides 'special solicitude to seaman.'" Id. (quoting United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc., 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (internal quotation marks omitted)). The Fifth Circuit concluded that "even with regard to foreign seamen, United States public policy does not necessarily disfavor lesser or different remedies under foreign law." Id.

On appeal, the plaintiff in Asignacion argued that Aggarao was "on all fours with his claims." Asignacion, 783 F.3d at 1018. The Fifth Circuit in Asignacion disagreed and found the cases factually distinguishable because in Aggarao, "[t]he Philippine arbitrators determined that Aggarao had a Grade 1 disability—the highest grade under the POEA contract—and awarded him $89,100 in disability benefits, sick pay and attorney's fees. The district court found

Aggarao had over $700,000 in unpaid medical debts, had to forgo necessary treatments, and would require lifetime care." Id. (citing Aggarao, 2014 WL 3894079, at *5) (internal citation omitted). The Fifth Circuit explained that the district court in Aggarao refused to enforce the arbitral award because it found that Aggarao's limited remedies under his employment contract violated public policy. Id. (citing Aggarao, 2014 WL 3894079, at *14)

The Fifth Circuit explained further that it "found no evidence that the Philippine arbitral award was inadequate relative to Asignacion's unmet medical needs, let alone so inadequate as to violate [the United States'] 'most basic notions of morality and justice.'" Id. (citing Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 288 (5th Cir. 2004)) (quoting M&C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 n.2 (6th Cir. 1996)).

Like Aggarao, the plaintiff in the present case alleges that she suffered severe medical injuries. The arbitral award dismissed her claims under Panamanian law and the plaintiff received nothing from the defendant. Factually, the plaintiff in the present action is more like the plaintiff in Aggarao and should be allowed to pursue her Article V(2)(b) defense that the arbitral award violates the public policy of the United States because she was unable to vindicate her Jones Act claim in the arbitration.

## RECOMMENDATION

In accordance with the foregoing, the undersigned respectfully recommends that the Defendant's Motion to Dismiss Plaintiff's Complaint (DE# 8, 6/10/16) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within

which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3–1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 28th day of November, 2016.